398 A.2d 631

**COMMONWEALTH of Pennsylvania**

v.

**Paul S. STANLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 1978.

Decided March 14, 1979.

Arthur G. Nassau, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Jane Greenspan, Philadelphia, for appellee.

4

Before O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On May 27, 1975, a jury convicted appellant of murder of the first degree for the July 29, 1974, killing of Timothy Shinn in Philadelphia. The jury also found appellant guilty of possession of an instrument of crime. Post-trial motions were denied. Appellant was sentenced to life imprisonment on the murder conviction and a five-year period of probation on the possession conviction to be served consecutively. This direct appeal followed.[1]

 Appellant contends that the trial court erred in admitting into evidence testimony of prior criminal acts occurring on the day before the killing.[2] We hold that the evidence of prior criminal acts should not have been admitted and we therefore reverse and remand for a new trial.

### I.

Appellant was first brought to trial for the murder of Timothy Shinn on February 5, 1975. During that proceeding, the Commonwealth attempted to introduce evidence of prior criminal acts and the court declared a mistrial. Upon retrial before another judge, the Commonwealth succeeded in introducing the very same evidence of prior crimes. That trial led to appellant's convictions.

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, §§ 202(1) & 503(c), 17 P.S. § 211.202(1) & 211.503(c) (Supp.1978).

2. Appellant also claims that the evidence was insufficient to support his conviction of murder of the first degree. Viewing the evidence in the light most favorable to the Commonwealth for purposes of assessing its sufficiency, *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976), we find that there was sufficient evidence from which the jury could have concluded beyond a reasonable doubt that appellant was guilty of murder of the first degree.

The prior criminal acts at issue involved two separate incidents occurring on July 28, 1974. The first incident took place in the afternoon while appellant was piloting a pleasure boat. Appellant was towing his sister-in-law on water skis when another boat crossed the tow line causing his sister-in-law to fall. Appellant drew out a .38 caliber automatic pistol and aimed it at the operator of the passing craft. Appellant's brother took the gun away from him and returned it later in the day.

The second incident took place a few hours later at about 8:00 p. m. Appellant's girlfriend, Anita Green, testified that appellant told her that on his way to her home another car "tried to cut him out in the traffic" and that the driver shouted at him. She testified further that appellant said he pulled out his gun. Ms. Green also stated that appellant told her that the other driver was "lucky the safety mechanism was on because he felt like blowing [his] head off."

The Commonwealth's other evidence reveals that at 9:00 p. m. appellant and Anita Green were at the home of appellant's brother Richard. Appellant and his brother argued about appellant's drinking, his "bad nerves," and about the gun he was carrying. Richard would not permit the weapon to remain in the house and so Anita put the gun in a paper bag and placed it under the front seat of appellant's car. When she returned to the house appellant asked her where she put the gun and she informed him.

After leaving Richard's home, appellant and Anita Green stopped for a hitchhiker who offered two dollars for a ride to the "Bubble Club" in Philadelphia. Anita, who did not wish to go to the bar, was observed by a policeman leaving appellant's car at a stop light on Frankford Avenue at about 1:50 a. m. Appellant and the hitchhiker proceeded to the bar. After a few drinks, appellant, the hitchhiker, and another, Louis McCloud, left together. Testimony at trial indicates that the hitchhiker was the victim Timothy Shinn.

At about 3:10 a. m. a policeman observed appellant's car stopped at an intersection. The officer saw two men. Appellant was at the wheel and the man with him was wiping

the passenger's side of the front seat with newspaper. The passenger soon discarded the papers into the gutter. He and appellant then drove on. Realizing that the car fit the description of one used in a robbery, the policeman pursued and stopped appellant. Appellant told the officer that his wife was in labor and that he was in a hurry to reach the hospital. The policeman verified the ownership of the vehicle and let appellant continue on his way.

A short time later that morning Shinn's body was found about 400 yards from the intersection where the police officer first observed appellant's car. The victim had been shot five times with .38 caliber bullets. Pages 1–14 and 23–36 of the Philadelphia Daily News were found near his body. The officer who had stopped appellant went back to the place where he observed appellant's passenger discard sheets of newspaper. The papers which he found were pages 15–22 of the same edition of the Daily News and were stained with blood matching the victim's blood type.

Appellant went to his mother's home at about 3:45 a. m. She observed that his shirt bore a dark brown stain. He asked for another shirt but would not explain what had happened. Appellant soon left his mother's house by the front door with his mother ahead of him. When they neared the front gate, appellant asked his mother to hurry and let him out the back way. Within ten to fifteen minutes police arrived at appellant's mother's door.

During their search of appellant's car, police found a .38 caliber cartridge clip containing three bullets under the front seat, five spent shells in the rear interior, and blood stains matching the victim's type on the passenger's side of the front seat. Six months later a .38 caliber automatic pistol was found buried in the back yard of appellant's mother's house. Ballistics tests revealed that the gun could have been the murder weapon, but because of deterioration of the metal no conclusive identification could be made.

## II.

The Commonwealth urges that the evidence of appellant's criminal conduct prior to the murder was admissible, despite

its prejudicial nature, as evidence of appellant's state of mind and his intent to kill someone. The Commonwealth also argues that the evidence was admissible to show that appellant possessed a .38 caliber automatic pistol shortly before the murder.

It is axiomatic that evidence of prior crimes is inadmissible against a defendant at his trial on another charge. E. g., *Commonwealth v. Roman,* 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Groce,* 452 Pa. 15, 303 A.2d 917 (1973). The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. *Roman,* supra; see *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). There are, of course, important exceptions to the rule where the prior criminal acts are so closely related to the crime charged that they show, inter alia, motive, intent, malice, identity, or a common scheme, plan or design. E. g., *Roman,* supra; *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972); *Commonwealth v. Faison,* 437 Pa. 432, 264 A.2d 394 (1970); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955); see *Commonwealth v. Peterson,* supra. Those exceptions, however, are not applicable to the present case where, in the absence of any direct and logical connection between appellant's prior acts and the crime charged, the Commonwealth in effect proved only that appellant was a violent man.

In *Commonwealth v. Roman,* supra, this Court was presented with a similar situation. There a member of a motorcycle gang was convicted of the murder of a prospective gang member. This Court reversed because the trial court erroneously admitted evidence of the defendant's violent criminal acts committed in the days just prior to the murder. First, the Court held that the trial court erred in admitting testimony that the defendant, after an argument in a bar with a female patron, began to shoot his revolver at

the woman's feet. This Court observed: "This incident, in short, tends to establish Roman's violent nature without showing malice toward [the victim] . . . ." Id., 465 Pa. at 525, 351 A.2d at 219. The Court also held that evidence that the defendant participated in a beating of another member and stole two calves, slaughtering one with a hammer, failed to bear any direct relationship to the killing. This Court concluded:

"Regardless of the [defendant's] personal character, he was entitled to have the jury determine his guilt or innocence of the crime charged in an objective manner. It is obvious to us that the erroneous admission of the evidence of the incidents unrelated to the crime on trial prevented such a determination. A new trial is, therefore, mandated."

Id., 465 Pa. at 528, 351 A.2d at 221. The same conclusion is required here. See, e. g., *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971).

 The Commonwealth argues that evidence of appellant's prior criminal acts should be admissible to prove a generally murderous state of mind on June 28 and 29, and a "scheme" to shoot anyone who was in some way threatening or disturbing. As in *Roman,* however, the Commonwealth's claims of relevancy are conjectural and fail to connect appellant's prior outbursts of violent anger to the killing of Timothy Shinn. Certainly appellant's prior assaults upon persons bearing no known similarity or connection to the victim and in circumstances in which appellant or his sister-in-law were in some way threatened show no intent, motive, plan, scheme, or design to kill the victim and reveal no malice or ill will against him. The Commonwealth's proof of prior acts could only have established that appellant was criminally violent, that he was inclined to resort to his weapon when threatened, and inferentially that he murdered Timothy Shinn. As this Court stated in *Commonwealth v. Spruill,* 480 Pa. 601, 391 A.2d 1048 (1978):

"fairness dictates that courts should be ever vigilant to prevent the introduction of . . . evidence [of prior

criminal activity] under the guise that it is being offered to serve some purpose other *than to demonstrate the defendant's propensity to commit the charged crime."* Id., 480 Pa. at 606, 391 A.2d at 1050–51 (emphasis in original).

The broad and novel exception urged by the Commonwealth would utterly defeat a fundamental purpose of the rule against admission of evidence of prior criminal acts by placing directly in issue the accused's violent disposition. Our case law requires that the Commonwealth's position be rejected.[3]

Even when this Court has determined that evidence of prior criminal acts fell within one of the recognized exceptions to the rule it has done so only after finding a direct and logical connection to the crime charged. In *Commonwealth v. Faison,* supra, for instance, the Court upheld the admission of evidence that the defendant previously threatened and raped the victim's sister-in-law, the Court observed:

> "In the present case, Mrs. Barksdale's testimony as to appellant's threats to her and his rape of her were relevant to the task of establishing appellant's settled pattern of malice as to her. The familial relationship of Dennis [the victim] to Mrs. Barksdale, the fact that appellant had been seeking Mrs. Barksdale at the Dennis home and apparently believed that the Dennis' knew her whereabouts, and the fact that the murder followed Dennis phone conversation with Mr. Barksdale are factors which, in our view, support the connection which the Commonwealth intended to establish between appellant's settled pattern of malice towards Mrs. Barksdale and his slaying of Dennis."

Id., 437 Pa. at 446–47, 264 A.2d at 401. Likewise in *Commonwealth v. Glover,* this Court held admissible evidence of threats and an assault against a woman's male friend in a

---

**3.** It is regrettable that the Commonwealth after causing one mistrial in an attempt to introduce this prejudicial evidence saw fit to press for its admission a second time.

prosecution for the murder of another male friend in the woman's apartment. The Court there stated:

"While proof of ill will and prior acts of hostility in the context of a homicide usually demonstrate the state of mind of a defendant to the victim himself, under the circumstances of this case, the evidence of bad feeling toward [the woman and her friend] was relevant to the homicide of [another friend]."

Id., 446 Pa. at 496–97, 286 A.2d at 351. The particularity of the connections established in these cases highlights the Commonwealth's failure to establish any connection here.[4]

■ The Commonwealth's remaining argument, that evidence of appellant's prior criminal acts was admissible to show his possession of a .38 caliber automatic pistol, is likewise without merit. While we agree that the evidence of possession was relevant and admissible, evidence that appellant twice reached for, aimed, and once almost fired the gun was obviously unnecessary to establish that appellant possessed the weapon. The Commonwealth could easily have shown possession and access in the hours prior to the killing without eliciting detailed descriptions of appellant's prior conduct. Nevertheless, such descriptions were admitted over appellant's objections as part of the Commonwealth's case in chief. As this Court stated in *Commonwealth v. Foose,* 441 Pa. 173, 272 A.2d 452 (1971), " '[t]he

---

4. Other cases recognizing exceptions to the rule barring evidence of prior criminal acts also show close connections between those prior crimes and the crime charged: e. g., *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955) (in prosecution for murder of truck driver shot while asleep in cab of truck on the Pennsylvania Turnpike, evidence that three days earlier and three days later two other drivers were shot nearby in the same circumstances was admissible as tending logically to prove that the person who committed the uncharged crimes was the same one who committed the murder charged); *Commonwealth v. Minoff,* 363 Pa. 287, 69 A.2d 145 (1949) (hostile acts and threats of violence during quarrel between church factions against member of one faction held admissible to prove murder of two other members of same faction); see *Commonwealth v. Bederka,* 459 Pa. 653, 659, 331 A.2d 181, 184 (1975) (threat against victim and defendant's wife arising out of wife's affair admissible to prove "state of mind toward certain persons with respect to a particular subject") (plurality).

only relevant factor . . . is that of the possession itself. Accordingly, any reference to collateral circumstances [involving criminal acts] unrelated to the possession itself are unnecessary and should be inadmissible.' " Id., 441 Pa. at 176–77, 272 A.2d at 453 (quoting dissenting opinion in Superior Court in same case); accord, *Commonwealth v. Fuller,* 479 Pa. 353, 388 A.2d 693 (1978).

For the above reasons, the judgment of sentence is reversed and a new trial is granted.

EAGEN, C. J., and POMEROY, former J., did not participate in the consideration or decision of this case.

NIX and LARSEN, JJ., dissent.