**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ricky Lee LEGARES, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 3, 1997.
Filed March 31, 1998.
Reargument Denied June 12, 1998.

Gerald A. Lord, York, for appellant.

Christy H. Fawcett, Assistant District Attorney, York, for the Commonwealth, appellee.

Before McEWEN, President Judge, and POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of York County, following appellant's conviction on the charge of murder in the first degree. Appellant was sentenced to life imprisonment. Herein, appellant claims, *inter alia*, that he is entitled to a new trial because: 1) The trial court erroneously admitted into evidence an unduly prejudicial color slide of the victim's head wound; and 2) The trial court erroneously admitted into evidence criminal activity of appellant which was unrelated to the charges *sub judice*. Upon review, we agree with appellant, reverse the decision of the court below and remand for a new trial.

On March 27, 1995, at approximately 10:30 p.m., Joseph Podlucky was murdered while sitting in his car in the parking lot of the Gingerbread Man, a restaurant and bar. Apparently, Mr. Podlucky was the victim of a robbery which turned tragic when he was shot in the head with a 20–gauge shotgun. Almost one year later, on February 26, 1996, appellant was arrested and charged with the murder and robbery of Mr. Podlucky. At trial, the Commonwealth was able to prove, *inter alia*, that appellant had access to a 20–gauge, sawed-off, single shot shotgun. Following a jury trial, appellant was convicted on both charges and was subsequently sentenced to life imprisonment.

During the early stages of the investigation, including the preliminary autopsy, officials believed the victim's death was a suicide. Numerous media accounts reported the possibility of a suicide. However, further investigation, including a thorough autopsy by Dr. Isadore Mihalakis, revealed that Mr. Podlucky's death was a homicide. In its opening statement at trial, the Commonwealth informed the jury:

> The preliminary findings of the pathologist at York Hospital were that the wound of entry in Joseph Podlucky's head was through his mouth, and that the exit wound was behind his left ear.

> Sometime after that initial autopsy was conducted, there was a second autopsy conducted by Isadore Mihalakis, who is a

forensic pathologist, and who is based in the Lehigh Valley area.

Dr. Mihalakis' findings were that Joe Podlucky, 21–year–old man was killed by a single shotgun blast to the head. That shotgun blast entered his head behind his left ear and exited his mouth.

Retrieved from Joe Podlucky's skull at the time of the initial autopsy were a 20–gauge shotgun shell, wadding and pellets consistent with pellets that are used in 20–gauge shotguns.

Dr. Mihalakis will testify that the angle and trajectory of the wound that he observed in Joe Podlucky's head was consistent with somebody standing next to a car, standing next to Joe Podlucky's car while Joe Podlucky was seated in the car, and shooting him in the back of the head, very possibly while Joe Podlucky was trying to convince that person that he had less than $3 to give them.

N.T., pp. 529–530.

■ Considering the factual background of this case as set forth above, we turn now to appellant's claim that he is entitled to a new trial because of the erroneous admission into evidence of an inflammatory and unduly prejudicial color slide of the victim's head wound. Recently, our Supreme Court restated the law regarding the admission into evidence of a photograph of a murder victim:

Photographs of a murder victim are not *per se* inadmissible. It is the manner in which the corpse is displayed that causes photographs to be emotionally charged. The admission of such photographs is a matter within the discretion of the trial judge. The test for determining the admissibility of such evidence requires that the court employ a two-step analysis. First a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible.* (emphasis added)

*Commonwealth v. Marinelli,* 547 Pa. 294, 321, 690 A.2d 203, 216 (1997), quoting *Commonwealth v. Chester,* 526 Pa. 578, 591–92, 587 A.2d 1367, 1373–74 (1991), *cert. denied,* 502 U.S. 849, 959, 112 S.Ct. 152, 422, 116 L.Ed.2d 117, 442 (1991); *see also Commonwealth v. Smith,* 544 Pa. 219, 675 A.2d 1221 (1996); *Commonwealth v. Rivers,* 537 Pa. 394, 644 A.2d 710 (1994). We will reverse the decision of the court below to admit the photograph into evidence only upon an abuse of discretion. *Marinelli,* 547 Pa. at 321–23, 690 A.2d at 217; *Commonwealth v. McCutchen,* 499 Pa. 597, 454 A.2d 547 (1982). We will find an abuse of discretion only when the essential evidentiary value of the photograph is clearly outweighed by the inflammatory effect the picture will have upon the minds and passions of the jurors. *Rivers,* 537 Pa. at 406–08, 644 A.2d at 716, citing *Chester, supra.*

Herein, the lower court found that the color slide was not inflammatory and its significant probative value outweighed any prejudicial effect it might have upon the jury. In so ruling, the court explained:

This is not a gruesome photo designed to inflame or prejudice the jury. The photo was taken after the wound had been cleansed and the skull wired together. It very clinically demonstrates burn marks made by the pellets and a small wound of entry. Its probative value is that it corroborates the testimony of Dr. Isadore Mihalakis and Corporal Rottmund, the ballistics expert, both of whom described the wound as an entry wound thereby discrediting the original suicide theory that surfaced immediately after Podlucky's death prior to the [appellant's] arrest. A review of the testimony will reveal that the original finding of suicide by the coroner was known to members of the jury who had followed the case from the beginning.

Trial Court Opinion, pp. 2–3.

■ Upon review of the color slide in question, we must disagree with the lower court's conclusion that the photograph was not inflammatory. To the contrary, the color

slide is quite gruesome. The grim visage highlights in gory detail the destruction wreaked upon the victim's skull by the 20–gauge shotgun blast. The left side of the victim's head is shown, the flesh flayed from the skull and folded back, the fractured skull wired together to reveal the gaping entry wound, and the victim's brain removed. The slide image was rendered all the more ghastly by the large size of its colored projection. We therefore find that the color slide was inflammatory. *Cf. Chester,* 526 Pa. at 592–94,587 A.2d at 1374 (color photograph depicting a closer view of the victim's body, in which a gaping neck wound is clearly visible, found to be inflammatory where there was no attempt to cover up the gruesome details of the photograph and the color photograph highlighted the gory detail).

■ Having determined that the color slide was inflammatory in nature, we must determine whether it was of such essential evidentiary value that its need clearly outweighed the likelihood of inflaming the minds and passions of the jurors. *Rivers, supra.* Upon review of the record, we conclude that the color slide was not essential evidence but rather was merely cumulative of other properly admitted evidence. Accordingly, we find the lower court abused its discretion in admitting the slide over the defense objection.

The lower court found that the color slide was essential to help the jury understand why Dr. Mihalakis believed that the victim's head wound was an entry, not an exit wound. The slide would illustrate Dr. Mihalakis' explanation that the victim's death was the result of a homicide, not a suicide as originally thought. However, as the record clearly reveals, the color slide was not necessary because *the defense never argued* that the victim committed suicide. In fact, before Dr. Mihalakis testified, the defense specifically stated:

> [W]e don't intend to present any evidence in this case that this was a suicide, and that Dr. Mihalakis' testimony about this being a homicide is not going to be questioned by any experts we may or might call in.

> We are willing to accept that, based on his opinion to a reasonable degree of medi-

cal certainty, that this is a homicide, as we are asking that be used in making her decision as to whether or not to show this slide to the jury. I think it obviates the need to show it to the jury.

N.T., pp. 867–868.

Immediately before Dr. Mihalakis illuminated the color slide projection, the defense renewed its objection to the slide and stated: "In addition to the fact that I am not going to be presenting any evidence from any experts indicating this is anything other than a homicide, I do not intend to engage any cross-examination of Dr. Mihalakis with regard to that theory, and based on that, I ask that the slide not be shown to the jury." N.T., p. 880. Again, the lower court denied appellant's objection.

Given appellant's admission that the victim was murdered, we can discern absolutely no reason why the color slide was essential evidence. The photograph was not necessary to support Dr. Mihalakis' uncontested theory of homicide. Rather, the color slide was apparently introduced for the purpose of prejudicing appellant by engendering in the minds of the jurors the thought that someone, i.e., appellant, must pay for this ghastly crime. Therefore, we find that the lower court erred in admitting the photograph into evidence. *Compare, Chester,* 526 Pa. at 592–94, 587 A.2d at 1374 (inflammatory photograph was necessary to refute defendants' claim that they simply had engaged in an altercation which unintentionally resulted in the victim's death by showing the victim's throat was slashed more times than could be counted); *Commonwealth v. Jacobs,* 536 Pa. 402, 407–09, 639 A.2d 786, 789 (1994) (inflammatory photographs were necessary to demonstrate that killing was intentional and that wounds were inflicted with both a knife and the claw end of a hammer).

■ We now turn to appellant's claim that the lower court erred in admitting into evidence the testimony of Karen McMaster. Ms. McMaster, over defense objection, was permitted to testify that she witnessed appellant discharging a gun similar in appearance to the 20–gauge sawed-off shotgun which the Commonwealth asserted was the murder

weapon approximately three and one-half blocks away from the murder scene on June 5, 1995. It is axiomatic that evidence of prior crimes is inadmissible against a defendant at trial on another charge. *Commonwealth v. Stanley*, 484 Pa. 2, 5–7, 398 A.2d 631, 633 (1979) (citing cases).

As stated in *Stanley, supra,*

> The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. There are, of course, important exceptions to the rule where the prior criminal acts are so closely related to the crime charged that they show, inter alia, motive, intent, malice, identity, or a common scheme, plan or design.

*Stanley*, 484 Pa. at 7, 398 A.2d at 633–634.

Those exceptions, however, are not applicable in the present case where, in the absence of any direct and logical connection between appellant's prior acts and the crimes charged, the Commonwealth, in effect, proved through the challenged evidence only that appellant was a violent person.

The lower court held that this evidence was relevant to "establish that a sawed-off shotgun was fired at a house." Trial Court Opinion, p. 1. The Commonwealth argues that the evidence was probative of the fact that appellant possessed and controlled the sawed-off shotgun. However, we disagree. First, Ms. McMaster's testimony was not necessary to prove that appellant had access to the alleged murder weapon since the weapon was seized from appellant's apartment. More importantly, the Commonwealth's proof of appellant's prior *use* of the shotgun could only have established that appellant was criminally violent, that he was inclined to use the shotgun, and, inferentially, that appellant murdered Joseph Podlucky. Accordingly, we find that the lower court erred when it permitted Ms. McMaster to testify that she saw appellant discharge the shotgun proximate to the murder scene. *Cf. Stanley*, 484 Pa. at 7–11, 398 A.2d at 634–635 (lower court committed reversible error when it admitted evidence of defendant's pri-

or unrelated criminal acts with a .38 caliber handgun, where defendant was on trial for murder of victim who had been shot five times with a .38 caliber handgun); *see also Commonwealth v. Fuller*, 479 Pa. 353, 388 A.2d 693 (1978) (lower court committed reversible error when it admitted into evidence defendant's prior assault and battery with a handgun during trial for murder in which same handgun was alleged to be one of the murder weapons).

Having determined that the lower court erred in admitting both the evidence of appellant's unrelated criminal act and the unduly prejudicial color slide, we must now determine whether the court's errors nevertheless were harmless. *Rivers*, 537 Pa. at 406–08, 644 A.2d at 716, citing *Commonwealth v. Story*, 476 Pa. 391, 404, 383 A.2d 155, 162 (1978). As our Supreme Court stated in *Story, supra,*

> [A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If "'honest, fair minded jurors might very well have brought in not guilty verdicts,'" an error cannot be harmless on the basis of overwhelming evidence. Once the court has determined that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

*Story*, 476 Pa. at 412–13, 383 A.2d at 166 (citations omitted; footnotes omitted).

■ Upon review, we cannot find that the evidence of appellant's guilt was so overwhelming that the prejudicial effect of the evidentiary errors were insignificant by comparison. Herein, the evidence of appellant's guilt was as follows: Appellant's half-brother, Eddie Andujar, offered the most damning evidence against appellant, when he testified

that on the night of the murder, appellant told him that he killed someone at the Gingerbread Man. Eddie's friend, Jon Johnson, testified that he was with Eddie during the telephone conversation, and immediately after the conversation ended, Eddie told him his brother had shot someone at the "G–Man." Jon Johnson's mother, Debra Johnson, testified that appellant telephoned her on the night of the murder in search of his brother and told her that his friend had shot someone at the Gingerbread Man. These telephone calls allegedly occurred before anyone other than someone involved in the murder could have known of the event. It should be noted, however, that Eddie Andujar and Jon Johnson were, at one point, suspects because they had told persons that they perpetrated the crime.

Two persons testified that they saw someone who matched the description of appellant near the scene of the crime proximate in time to the shooting. However, neither eyewitness was able to identify appellant as the person they saw. Subsequently, the police seized clothing from appellant's residence which was similar to the clothing which the witnesses said was worn by the person whom they saw near the crime. However, forensic testing of the clothes did not uncover any evidence of the murder such as the victim's blood or hair. Further, the police were not able to recover any evidence, such as fingerprints, from the crime scene itself.

Evidence also revealed that a 20–gauge sawed-off shotgun was seized from appellant's apartment. Although the shotgun possessed by appellant could not be positively confirmed as the murder weapon, it was clear that the murder weapon was a 20–gauge shotgun with an unfinished, i.e., sawed-off, barrel. Finally, testimony of appellant's other half-brother, Joshua Andujar, indicated that appellant attempted to fabricate an alibi when he asked Joshua to tell the authorities that appellant was with him at the time of the murder.

Given the lack of both physical evidence which links appellant to the crime and eyewitness identifications of appellant as the perpetrator, we cannot find appellant was convicted on the basis of overwhelming evidence. The case is wholly circumstantial and based mostly upon the testimony of appellant's brother to whom appellant allegedly made an incriminating admission. However, Eddie Andujar's testimony was seriously called into question during cross-examination when it was revealed that Eddie himself had claimed to have committed the murder at one point in time. Given the lack of physical evidence implicating appellant, the lack of eyewitness testimony and the cross-examination of Eddie Andujar which cast doubt upon his credibility, we cannot say that it is clear beyond a reasonable doubt that the errors, i.e., the admission of the color slide and the admission of appellant's prior bad act involving a shotgun, could not have contributed to the verdict. Cf. *Commonwealth v. Lasch*, 464 Pa. 259, 346 A.2d 547 (1975) (improper admission of defendant's pre-trial statement to police was *not* harmless error where defendant's cross-examination cast doubt upon the credibility of two witnesses, one of whom testified that the defendant made an incriminating admission). Accordingly, we reverse the conviction of appellant and remand for a new trial.[1]

Judgment of sentence reversed. Case remanded for a new trial.

---

1. In addition to the issues which we have addressed, appellant alleges that the lower court erred in admitting into evidence a black and white photograph of the crime scene which depicted the victim slumped forward in the passenger seat covered in blood. Also, appellant claims that the lower court erred when it ruled that appellant had waived an objection to the prosecution's opening statement since appellant waited until the prosecution had concluded its opening to raise the objection. In light of our decision to remand this case for a new trial, we need not rule upon the merits of these additional issues.