J-S28011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JONATHAN MONTE CORNISH | |
| Appellant | No. 1562 MDA 2014 |

Appeal from the Judgment of Sentence August 21, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001433-2013

BEFORE:  BOWES, J., ALLEN, J., and LAZARUS, J.

CONCURRING MEMORANDUM BY LAZARUS, J.:        **FILED JUNE 29, 2015**

I concur, because like the majority, I believe that the judgment of sentence should be affirmed.   However, I disagree regarding the admissibility of two color photographs, Commonwealth Exhibits 10 and 11, which graphically depict the victim's head wounds.

In my view, the majority is mistaken in concluding that the Commonwealth was permitted to enter the inflammatory photographs into evidence to show specific intent, an element of the first-degree murder charge in the instant matter.  The majority relies upon *Commonwealth v. Mollett*, 5 A.3d 291 (Pa. Super. 2010), in which an inflammatory photograph was deemed admissible to demonstrate the defendant's intent in shooting a police officer who died of the gunshot wound.

In deciding **Mollett**, this Court specifically distinguished the case before it from **Commonwealth v. Powell**, 241 A.2d 119 (Pa. 1968), which held that color photographs of the victim who died as a result of head injuries were unnecessary because specific intent had no bearing on determining whether the defendant had committed felony murder. In **Mollett**, however, specific intent was at issue; the defendant asserted that the gun was fired accidentally as the result of a struggle with the officer, while the Commonwealth presented a theory that the gun had been discharged intentionally, execution style. The photograph in question was deemed to be more probative than prejudicial because it demonstrated that the bullet entered one side of the officer's head and exited the other side, in a downward trajectory. This was consistent with an execution-style shooting and demonstrated a specific intent to shoot, and thereby kill, the officer. **See Mollett**, 5 A.3d at 303-04.

Here, Cornish denied any involvement in causing Jose Vasquez's death. Thus, the instant matter does not parallel the circumstances present in **Mollett**, as no competing explanation for the victim's injuries, such as self-defense, was presented in response to the Commonwealth's theory. However, the Commonwealth argued before the trial court that the photographs in question demonstrate the magnitude of the injuries the victim suffered and thus are admissible to show specific intent to kill. The trial court permitted the photographs to be shown to the jury on this basis; the majority agrees with this reasoning, stating that the "photographs

demonstrate the force required to cause the injuries suffered and eradicated any doubt that the person who inflicted the blows [intended] to cause death." Majority Memorandum, at 8.

While it may be true that the photographs in question would "eradicate" any doubt regarding the intent behind the attack on Jose Vasquez, where such inflammatory evidence is cumulative, rather than essential, it should not be admitted. *See Commonwealth v. LeGares*, 709 A.2d 922, 925 (Pa. Super. 1998) (finding inflammatory slide was not essential evidence, but rather merely cumulative of other properly admitted evidence; trial court abused its discretion in admitting slide over defense objection). Instantly, the photographs were cumulative, as expert testimony provided a detailed explanation of the victim's injuries, including a description of brain matter on his shoulder and blood splatter on the walls of his bedroom. Thus, the inflammatory photographs were not essential, and the trial court abused its discretion in admitting them into evidence.

Moreover, the majority's conclusion that "the testimony of the expert witness in this matter, regarding the significant damage to Jose Vasquez's skull, was more disturbing than the actual photographs," Majority Memorandum, at 8, does not make the inflammatory photographs automatically admissible. Indeed, the reverse is true, since expert testimony combined with admissible photographs of blood splatter provided sufficient evidence of specific intent to kill in this matter.

While it was clear error for the trial court to admit the inflammatory photographs into evidence, the additional evidence presented by the Commonwealth was of such great weight that the error was harmless. ***Cf. LeGares***, ***supra***, at 927 (inadmissibility of slide combined with overall lack of evidence required grant of new trial).

For the foregoing reasons, I disagree regarding the admissibility of Commonwealth Exhibits 10 and 11, but concur in the majority's result, since admitting the photographs was harmless error.