J-S57004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JALIK PEAY | |
| Appellant | No. 495 EDA 2013 |

Appeal from the Judgment of Sentence September 27, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011915-2010

BEFORE:  MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:              **FILED OCTOBER 22, 2015**

Appellant, Jalik Peay, appeals from the September 27, 2012 aggregate judgment of sentence of 20½ to 41 years' imprisonment, imposed after a jury convicted Appellant of one count each of attempted murder, aggravated assault, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of a crime (PIC).[1]  After careful review, we affirm.

The trial court summarized the relevant factual and procedural background of this case as follows.

> At approximately 9:30 p.m. on March 2, 2010, Shikeem Alexander-Frederick got into his silver Buick sedan and drove to the neighborhood store to

---

[1]  18 Pa.C.S.A. §§ 901(a), 2702(a), 6106(a)(1), 6108 and 907(a), respectively.

purchase cigarettes. When he arrived at this intersection, he encountered [Appellant] as well as Ashia Terry and Arron Williams, three men known for their affiliation to a gang called the Jungle Mob Soldiers (JMS).

Mr. Alexander-Frederick and [Appellant] got into a verbal argument, which escalated into [Appellant] brandishing a .357 Smith and Wesson revolver and emptying its chamber into Mr. Alexander-Frederick.

[Mr.] Alexander-Frederick was rushed to Einstein Medical Center in extremely critical condition resulting from five gunshot wounds: two to the left side of his back, a third to his left thigh, a fourth to his left hand, and a fifth wound to his left mandible. Doctors surgically removed bullet fragments, later determined to be of the .357/.38 caliber family, from his left lung. Additionally, Mr. Alexander-Frederick suffered a fractured sternum, three fractured ribs, a severely lacerated liver, a damaged gallbladder and colon, and fifty percent of his small intestine was removed. Doctors performed no less than twelve surgeries to repair the damage to his body and placed him in a medically-induced coma for approximately one month.

An investigation ensued. Two deformed projectiles were recovered from the intersection of Chew [Avenue] and Locust [Street]. This ballistic evidence established that these projectiles were from a .38 caliber revolver. A .357 Smith and Wesson revolver belongs to the .38 caliber family.

Detectives conducted several witness interviews. Mr. Jesse Jones told the police and testified that in the early afternoon of March 2, 2010, when he was outside on the 5500 block of Crowson Street, [Appellant] and Ashia Terry approached him and asked "what's up with Keem … when is a good time to get (rob) him?"

Mr. Darnell Powell told the police and testified that he was waiting for the bus at the corner of Chew and Locust at about 9:15 p.m. or 9:30 p.m. on the evening of March 2, 2010. He told police that a guy exited a Buick, went into and exited the pizza shop, and upon exiting the pizzeria, starting arguing with another man. The men argued for a few minutes before one of them shot the other.

Mr. Michael Edward Woodson stated that on March 2, 2010, he walked past [Appellant], Ashia Terry, and Arron Williams on the porch at 5534 Crowson Street "and as soon [as] I sat down in my homie's living room I heard about eight shots … about ten to fifteen minutes went by and [Appellant] came from the bottom of the block to the middle of the block … where I was at. You can tell that he was paranoid, sweating and nervous."

Mr. Alexander-Frederick regained consciousness on April 7, 2010. On that day, while talking to his girlfriend, Lovewanda Carter, Mr. Alexander-Frederick said that [Appellant] shot him. Ms. Carter informed Detective Knecht of this fact, and on April 9, 2010, the Detective came to Einstein Medical Center to memorialize a statement from the victim. During this interview, Mr. Alexander-Frederick stated, "… someone called my name then I heard six gunshots. I felt like I was hit everywhere. I fell to the ground. Before I passed out I looked and saw [Appellant] … smiling at me." Detective Knecht also produced an eight-person photo array that included [Appellant]'s photo. Mr. Alexander-Frederick immediately identified [Appellant] as the man who shot him.

On April 15, 2010, Philadelphia Police executed an arrest warrant and search warrant for [Appellant]'s residence located at 5518 Chew Avenue. In [Appellant]'s second-floor bedroom, police recovered a .357 Smith and Wesson revolver loaded with six live rounds and a loaded .25 caliber semiautomatic Raven Arms handgun. At trial, the ballistician could not testify with one hundred

percent scientific certainty that the bullet fragments recovered from Mr. Alexander-Frederick's body were fired from [Appellant]'s .357 revolver.

The preliminary hearing was scheduled for June 17, 2010. Mr. Alexander-Frederick, who was released from the hospital at the end of May 2010, met with [the Commonwealth] a week prior to the hearing. During these preparations, he reaffirmed that he would testify, under oath, that [Appellant] was indeed the man who shot him on March 2, 2010.

However, [Appellant] took steps to ensure that Mr. Alexander-Frederick would not testify against him. While incarcerated, by way of letters and telephone conversations, [Appellant] remained in contact with members of the JMS and his family and made several references to ending Mr. Alexander-Frederick's life.

At 5:45 p.m. on June 12, 2010, five days before the preliminary hearing, Mr. Alexander-Frederick was executed on the front porch of his home located at 500 Ashmead Street. He suffered approximately seven gunshot wounds and died almost instantly. At the time this trial commenced, no one, including [Appellant], was charged with the murder of Shikeem Alexander-Frederick.

Trial Court Opinion, 2/25/14, at 4-7 (internal citations and footnotes omitted).

On October 26, 2010, the Commonwealth filed an information charging Appellant with the above-listed offenses, as well as one count each of terroristic threats, simple assault, and recklessly endangering another

person (REAP).[2] On June 7, 2012, Appellant proceeded to a jury trial, at the conclusion of which, the jury found Appellant guilty of one count each of attempted murder, aggravated assault, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and PIC. The terroristic threats, simple assault, and REAP charges were *nolle prossed*. On September 27, 2012, the trial court imposed an aggregate sentence of 20½ to 41 years' imprisonment.[3] On October 5, 2012, Appellant filed a timely post-sentence motion, which the trial court denied on February 1, 2013. On February 8, 2013, Appellant filed a timely notice of appeal.[4]

On appeal, Appellant raises the following issues for our review.

> [1.] Did the trial court improperly admit unduly
> prejudicial hearsay evidence from the
> deceased complaining witness at this jury trial,
> violating Appellant['s] confrontation rights?

_____

[2] 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a) and 2705, respectively.

[3] Specifically, the trial court sentenced Appellant to 18 to 36 years' incarceration for attempted murder, one and one-half to three years for firearms not to be carried without a license, and one to two years for carrying firearms in public in Philadelphia. All sentences were to run consecutively and no further penalty was imposed on the remaining two charges.

[4] On August 14, 2013, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) within 21 days. Appellant did not timely comply. However, on November 19, 2013, this Court granted Appellant's application for a remand to the trial court to file a Rule 1925(b) statement within 60 days. Appellant timely complied with this Court's order on December 3, 2013. The trial court filed its Rule 1925(a) opinion on February 25, 2014.

[2.] Did the trial court improperly admit extensive and unduly prejudicial other acts evidence pursuant to Pennsylvania Rule of Evidence 404(b)?

[3.] Did the [Commonwealth]'s statements during his closing argument unduly prejudice Appellant[,] … improperly comment on [Appellant]'s silence, or improperly attempt to shift the Commonwealth's burden?

Appellant's Brief at 2.

Appellant's first issue on appeal has two components; however, we address both parts together because they are intertwined. Appellant argues that the trial court erred when it admitted into evidence certain statements of the victim. Specifically, Appellant avers that the Commonwealth failed to meet its burden under both the forfeiture by wrongdoing exception to the rule against hearsay and the Confrontation Clause. *Id.* at 14, 20. We begin by noting our well-settled standard of review.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), *appeal denied*, 83

- 6 -

A.3d 167 (Pa. 2013). However, the determination of "[w]hether Appellant was denied [his] right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Dyarman***, 33 A.3d 104, 106 (Pa. Super. 2011) (citation omitted), *affirmed*, 73 A.3d 565 (Pa. 2013), *cert. denied*, ***Dyarman v. Pennsylvania***, 134 S. Ct. 948 (2014).

"Hearsay means a statement that … the declarant does not make while testifying at the current trial or hearing; and … a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

> This Court has long recognized that to insure a party the guarantees of trustworthiness resulting from a declarant's presence in court, a proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted. Thus, the burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions.

***Commonwealth v. Smith***, 681 A.2d 1288, 1290 (Pa. 1996) (internal quotation marks and citations omitted).

Rule 804 contains numerous exceptions to hearsay, including the one at issue in this case, pertaining to forfeiture by wrongdoing. The relevant part of the Rule provides as follows.

> **Rule 804. Exceptions to the Rule Against Hearsay--When the Declarant is Unavailable as a Witness**
>
> …
>
> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> …
>
> (6) *Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability.* A statement offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result.

Pa.R.E. 804(b)(6).

Likewise, the Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. In ***Crawford v. Washington***, 541 U.S. 36 (2004), the United States Supreme Court declared a dramatic change in Confrontation Clause doctrine.[5] The Court held that "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." ***Id.*** at 59.

_____

[5] The Confrontation Clause of the Sixth Amendment is applicable to the States via the Due Process Clause of the Fourteenth Amendment. ***Melendez-Diaz v. Massachusetts***, 557 U.S. 305, 309 (2009) (citation omitted).

*Crawford* generally divests the Confrontation Clause from state hearsay law and evidence rules.[6] *See generally Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015).

However, the United States Supreme Court has held that the Confrontation Clause contains an exception of forfeiture by wrongdoing. *Giles v. California*, 554 U.S. 353, 359 (2008). At common law, "unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying." *Id.* at 361 (emphasis in original). The High Court noted that Federal Rule of Evidence 804(b)(6) "codifies the forfeiture doctrine." *Id.* at 367. Federal Rule 804(b)(6) and Pennsylvania Rule 804(b)(6) are identical. *Compare* Fed.R.E. 804(b)(6), (allowing admission of "[a] statement offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result[]", *with* Pa.R.E. 804(b)(6) (same). Therefore, if the Commonwealth met its burden under Rule 804(b)(6), it will have *a fortiori* satisfied the exception to

---

[6] Prior to *Crawford*, the controlling case in this area was *Ohio v. Roberts*, 448 U.S. 56 (1980). In *Roberts*, the United States Supreme Court held that the Confrontation Clause permitted the use of hearsay testimony of an unavailable declarant at trial if it fell into a "firmly rooted hearsay exception" or if the statement bore "particularized guarantees of trustworthiness." *Id.* at 66.

the Confrontation Clause.[7]  ***Commonwealth v. King***, 959 A.2d 405, 416 (Pa. Super. 2008).  To satisfy its burden under Rule 804(b)(6), the Commonwealth "must establish by a preponderance of the evidence that: "(1) the defendant … was involved in, or responsible for, procuring the unavailability of the declarant … and (2) the defendant … acted with the intent of procuring the declarant's unavailability as an actual or potential witness."  ***Id.*** at 415, *quoting* ***United States v. Dhinsa***, 245 F.3d 635, 653-654 (2d Cir. 2001), *cert. denied*, ***Dhinsa v. United States***, 534 U.S. 897 (2001).

In this case, as detailed by the trial court, the Commonwealth presented ample evidence that Appellant was involved in procuring Alexander-Frederick's unavailability, thus precluding him from testifying at Appellant's trial.  In its motion *in limine*, the Commonwealth provided transcribed telephone conversations from when Appellant was incarcerated awaiting trial.  Therein, Appellant discussed with his father the witnesses who were going to testify against him at his upcoming trial.

---

[7] The parties do not appear to dispute that Alexander-Frederick's statements to the police at the hospital were testimonial and Appellant was not afforded a prior opportunity to cross-examine him. ***See, e.g.***, ***Hammon v. Indiana***, 547 U.S. 813, 830 (2006) (concluding that victim's statement to police during interview that took place in her living room after domestic disturbance was testimonial for the purposes of the Confrontation Clause). Therefore, unless the Commonwealth met its burden under the forfeiture by wrongdoing exception, the Confrontation Clause would have rendered Alexander-Frederick's statements inadmissible.

Commonwealth's Motion *In Limine*, 11/22/11, at 12. Appellant identified Alexander-Frederick by name to his father. ***Id.*** at Exhibit C-8, at 13. Appellant also discussed "a rat" with another caller and how the caller should "get someone to go up there and talk to that bull though man." Commonwealth's Motion *In Limine*, 11/22/11, at 14. Appellant and this caller also discussed how the caller reacts in "certain situations." After Alexander-Frederick talked to the police, Appellant, while speaking with his father, discussed how Alexander-Frederick "got two sets of bullets in him." ***Id.*** at 15. His father responded by saying "[h]e aint [sic] gonna testify and all that[.]" ***Id.***

After careful review, we conclude Appellant is not entitled to relief. The Commonwealth's recorded conversations, as highlighted above, demonstrate that Appellant actively discussed and threatened the person who was talking to the police about his case. As the Commonwealth points out, "[t]he physical evidence and statements from the witnesses only indicate the presence of one shooter and one gun in shooting Mr. Alexander-Frederick the first time." ***Id.*** at 16. Therefore, it is logical that Appellant's use of the term "two sets of bullets" more likely than not referred to an instruction to injure Alexander-Frederick a second time, with a second set of bullets. As the telephone calls also reveal, the discussions were all in the context of Alexander-Frederick testifying in Appellant's case. Therefore, we conclude the Commonwealth did meet its burden of showing that Appellant

was involved in procuring Alexander-Frederick's unavailability for the purpose of him not testifying in Appellant's case. As a result, the trial court did not abuse its discretion in admitting Alexander-Frederick's statement under Rule 804(b)(6), and Appellant's Confrontation Clause rights were not violated. **See Fischere**, **supra**; **Dyarman**, **supra**.

In his second issue, Appellant avers that the trial court abused its discretion when it admitted evidence of certain bad acts pursuant to the *res gestae* exception under Pennsylvania Rule of Evidence 404(b). The Commonwealth counters that the trial court did not abuse its discretion as the evidence completed the history of the case for the jury. Commonwealth's Brief at 13. The Commonwealth also avers that the evidence was admissible to show consciousness of guilt. **Id.**

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. [**Id.** at] 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. **Commonwealth v. Powell**, 598 Pa. 224, 956 A.2d 406, 419 (2008).
>
> [**Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, **Sherwood v. Pennsylvania**, 559 U.S. 1111 (2010)]. The

> Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts. **Commonwealth v. Stanley**, 484 Pa. 2, 7, 398 A.2d 631, 633 (1979); **Commonwealth v. Constant**, 925 A.2d 810, 821 (Pa. Super. [2006]), *appeal denied*, 594 Pa. 675, 932 A.2d 1285 (2007).

**Commonwealth v. Ross**, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*), *appeal denied*, 72 A.3d 603 (Pa. 2013). Although Rule 404(b) is colloquially known as a rule prohibiting evidence of prior bad acts, our cases have held that, consistent with the text of Rule 404, its exceptions may permit the Commonwealth to introduce evidence of **subsequent** bad acts. **Commonwealth v. Wattley**, 880 A.2d 682, 685 (Pa. Super. 2005) (citation omitted), *appeal dismissed*, 924 A.3d 1203 (Pa. 2007). Our Supreme Court has long recognized a *res gestae* or "complete story" exception to Rule 404(b)(1). **See Commonwealth v. Paddy**, 800 A.2d 294, 308 (Pa. 2002) (stating, evidence of other crimes may be admissible "where [it] was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts[]") (citation omitted).

Our Supreme Court and this Court have recognized that a defendant's subsequent bad acts directed at a witness are generally admissible under the *res gestae* exception to Rule 404(b)(1). In **Commonwealth v. Flamer**, 53 A.3d 82 (Pa. Super. 2012), Flamer and his uncle were arrested for the

murder of the victim, Allen Moment, Jr. *Id.* at 84. Before Flamer's trial, "the Commonwealth planned to call Abdul Taylor, who, according to the Commonwealth, had knowledge of the plot by [Flamer and his uncle] to kill Moment." *Id.* at 85. Taylor was killed three months before trial. *Id.* The Commonwealth sought to introduce multiple pieces of evidence showing that Flamer and his uncle conspired with the gunman to kill Taylor to prevent him from testifying. This Court held that "evidence of a conspiracy by [Flamer and his uncle] to kill Taylor to prevent him from testifying at the Moment murder trial … [was admissible] to show the history of the case and the guilty conscience of the defendants." *Id.* at 86-87. This is consistent with the cases from our Supreme Court. *See, e.g.*, *Commonwealth v. Murphy*, 657 A.2d 927, 932 (Pa. 1995) (stating, "[t]he facts behind the murder of [a witness] were so interwoven with the facts of the case [for which the defendant was on trial] that such evidence was properly admitted as *res gestae*[]").

Here, the Commonwealth introduced the following evidence.

> (1) [Appellant]'s affiliation with the Jungle Mob Soldiers; (2) Ashia Terry and Arron Williams['] affiliation with the Jungle Mob Soldiers; (3) recorded telephone conversations [Appellant] had with his father and Ashia Terry while incarcerated regarding his case; (4) testimony from Raul West describing the events of June 12, 2010, the day Mr. Alexander-Frederick was murdered; (5) the identification that Arron Williams murdered Mr. Alexander-Frederick; (6) recorded telephone conversations about [Appellant] confronting Edward Woodson about his testimony; (7) [Appellant]'s hand-written letters

- 14 -

attempting to distance himself from Ashia Terry; (8) [Appellant]'s hand-written letter attempting to solicit a women's help because she is loyal; (9) [Appellant]'s statement to Mr. Jesse Jones in the afternoon hours of March 2, 2010 asking when and where he can find Mr. Alexander-Frederick; and (10) recorded telephone conversations where [Appellant] admits to owning the firearms Philadelphia police recovered while executing a search warrant of [Appellant]'s home.

Trial Court Opinion, 2/25/14, at 19.

The trial court further explained its reasoning as follows.

[Appellant]'s statements to Mr. Jesse Jones inquiring about the victim's whereabouts in the afternoon hours of March 2, 2010 is the only act the Commonwealth moved to introduce that happened prior to the crime. [Appellant] asked Mr. Jones, "what's up with Keem … when is a good time to get him?" This question strongly suggests that the shooting was not accidental; it was premeditated and committed with the intent to take Mr. Alexander-Frederick's life. Thus, the requirements of Pa.R.E. 404(b)(2) are met and this evidence is admissible.

…

The remainder of the other bad acts the Commonwealth moved to admit occurred after March 2, 2010 and were triggered by Mr. Alexander-Frederick's signed, adopted statement to Philadelphia Detectives on April 9, 2010 that identified [Appellant] as his assailant. This identification is the only evidence linking [Appellant] to the shooting. After Mr. Alexander-Frederick identified [Appellant], [Appellant] was arrested and held in custody. [Appellant]'s incarceration proved to be his proverbial Achilles' heel. Despite [Appellant]'s forfeiture of his right to privacy while confined, he maintained contact with his family and members of the Jungle Mob Soldiers via the prison telephones. As such, his conversations were recorded. Recorded

- 15 -

telephone conversations between [Appellant] and his father on April 17 and 19, 2010 and [Appellant] and his mother on April 18, 2010 strongly suggest that once [Appellant] learned the identity of his accuser, he sought revenge. Recorded telephone conversations between [Appellant] and [Terry] on April 17, 2010 and April 20, 2010 allude to the fact that [Appellant] solicited help from members of the JMS to eliminate Mr. Alexander-Frederick. Letters recovered from [Appellant]'s jail cell confirm [Appellant]'s affiliation with the JMS and his connections to [Terry]. [Appellant]'s efforts to prevent Mr. Alexander-Frederick from testifying against him came to fruition one week prior to the preliminary hearing when the witness was shot and killed on the front porch of his home.

…

[T]his evidence would prevent the jury from wondering what happened to the complaining witness and would prevent speculation as to why he was not testifying in court. The evidence admitted pursuant to Pa.R.E. 404(b) showed exactly where he went and the circumstances surrounding his death. … March 2, 2010 simply began this saga. Events that followed the shooting of Mr. Alexander-Frederick on March 2, 2010 were appropriately admitted to enable the jury to properly understand the entire chain of events.

*Id.* at 20-23 (internal quotation marks and footnotes omitted).

After careful review, we agree with the trial court's conclusion. The Commonwealth's evidence explained why the complaining witness of the crime for which Appellant was on trial was not present to testify. The victim's death transpired as a direct result of Appellant's arrest and trial in this case. Therefore, in our view, the Commonwealth's evidence surrounding the victim's ultimate demise "w[as] so interwoven with the facts

- 16 -

of the case [for which the defendant was on trial] that such evidence was properly admitted as *res gestae*." **Murphy**, **supra**. As a result, the trial court did not abuse its discretion in granting the Commonwealth's motion *in limine*. **See Fischere**, **supra**.

In his third issue, Appellant argues the trial court erred when it denied his motion for a mistrial following certain statements made by the Commonwealth in its summation. Appellant's Brief at 39. The Commonwealth counters that the trial court properly denied Appellant's motion, as its comments were in fair response to those made by Appellant in his own closing argument to the jury. Commonwealth's Brief at 15-16.

We begin by stating our standard of review.

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

**Commonwealth v. Fortenbaugh**, 69 A.3d 191, 193 (Pa. 2013) (citation omitted).

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is

well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." ***Commonwealth v. Sampson***, 900 A.2d 887, 890 (Pa. Super. 2006) (citation omitted)[, *appeal denied*, 907 A.2d 1102 (Pa. 2006)]. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

***Commonwealth v. Judy***, 978 A.2d 1015, 1019 (Pa. Super. 2009).

During its closing argument, the Commonwealth made the following comment to the jury.

Ladies and gentlemen, that's less than 24 hours after he got arrested. Counsel wants to play the rest of that recording, by all means. He believes there's another connotation he could[n't] have done it. There's none. There's nothing else that he's talking about.

N.T., 6/12/12, at 54-55. Appellant argues the Commonwealth improperly commented on facts not in evidence because the trial court had already ruled that Appellant could not introduce the referenced recordings. Appellant's Brief at 41. Appellant further avers that the Commonwealth engaged in impermissible burden-shifting. ***Id.*** at 42. As noted above, the Commonwealth argues that the trial court properly concluded that its comment was a fair response to Appellant's own summation. Commonwealth's Brief at 15-16.

This Court has explained the fair response doctrine in the following terms.

> While it is improper for a prosecutor to offer any personal opinion as to guilt of the defendant or credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt. In addition, the prosecutor must be allowed to respond to defense counsel's arguments, and any challenged statement must be viewed not in isolation, but in the context in which it was offered. The prosecutor must be free to present his or her arguments with logical force and vigor." Within reasonable bounds, the prosecutor may employ oratorical flair and impassioned argument when commenting on the evidence ….

*Commonwealth v. Riggle*, --- A.3d ---, 2015 WL 4094427, *7 (Pa. Super.

2015) (citation omitted).

In the case *sub judice*, Appellant made the following argument in his

summation regarding the tapes in question.

> It should be instructed to you as we all heard yesterday and we'll talk about these prison tapes in a moment that [Appellant] who's been in jail for about two years awaiting his trial on this case you heard from those two years about probably 15 minutes of tape and you heard the [Commonwealth] fastforward [sic] them through portions of those tapes picking out snippets that they want to try to use to convince you that something very cerebral was going on.
>
> …
>
> I think in regards even to those portions of the tape which the Commonwealth played they felt they were the most incriminating portions of those tapes they had all the last two years to go through that's the best that they can do.

N.T., 6/12/12, at 16-17, 31.

The trial court rejected Appellant's arguments based on the following.

> [Appellant] clearly opened the door to the [Commonwealth]'s comments regarding the prison tapes. Once the door is opened, [Appellant] cannot slam it shut because he does not like the animal that is behind it. The [Commonwealth] simply responded to these comments. [The Commonwealth] did not suggest that [Appellant] had to prove his innocence, and as such, [the Commonwealth's] comments did not amount to burden shifting.

Trial Court Opinion, 2/25/14, at 26.

After careful review, we agree with the trial court's conclusion. Appellant argued to the jury that the Commonwealth only selected certain portions of the prison tapes to make Appellant sound the most guilty. The Commonwealth was free to respond to such argument by simply commenting that there was more dialogue recorded than what had been played. As the trial court recognized, the Commonwealth's response did not imply that Appellant had the burden to negate the Commonwealth's case.

However, even if it could be reasonably interpreted to do so, we note the trial court instructed the jury as part of its charge that a criminal defendant "is not required to present evidence or to prove anything. If the evidence that is presented fails to meet the Commonwealth's burden, your verdict must be not guilty." N.T., 6/12/12, at 64-65. It is axiomatic that the jury is presumed to have followed the trial court's instructions. ***Commonwealth v. Arrington***, 86 A.3d 831, 853 (Pa. 2014) (citation

omitted). Based on all of these considerations, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

Based on the foregoing, we conclude all of Appellant's issues on appeal are devoid of merit. Accordingly, the trial court's September 27, 2012 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/22/2015