Commonwealth *v.* Faison, Appellant.

434

Argued April 23, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Paul J. Cody,* for appellant.

*Michael M. Baylson,* Assistant District Attorney, with him *James D. Crawford,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Pomeroy, March 25, 1970:

On July 13, 1951, appellant Lamar Faison shot and killed one Harold R. Dennis. The following day appellant was apprehended and charged with murder. In May 1952, following a trial by jury. at which he was

represented by privately-retained counsel, appellant was found guilty of murder in the first degree, and his penalty was fixed at life imprisonment. Thereafter, appellant's trial counsel filed a motion for new trial which was denied by the trial court after a hearing. In accordance with the penalty fixed by the jury, the appellant was sentenced to life imprisonment. At the close of the hearing, appellant's attorney, speaking on the record, informed appellant that he had forty-five days in which to file an appeal from the judgment of sentence. Thereupon he moved to withdraw as counsel for the appellant and was granted permission to do so by the trial court. No appeal was taken.

In 1967, appellant filed successive petitions for writs of habeas corpus in the Court of Quarter Sessions of Philadelphia County[1] and in the District Court of the United States for the Eastern District of Pennsylvania.[2] Both these petitions were denied; neither denial

---

[1] The appellant's state habeas corpus petition challenged on due process grounds the admission of evidence of defendant's prior guilty pleas to charges of homicide. Appellant's trial preceded Pennsylvania's enactment of the Split-Verdict Act, Act of December 1, 1959, P. L. 1621, §1, 18 P.S. §4701, and the admission of this evidence of prior convictions was in accord with established practice. See *Commonwealth v. Parker*, 294 Pa. 144, 143 Atl. 904 (1928). Appellant's due process challenge to that procedure was denied by the lower court on the authority of *Spencer v. Texas*, 385 U.S. 554 (1967), *reh. denied*, 386 U.S. 969 (1967), in which the United States Supreme Court upheld the constitutionality of a similar Texas procedure.

[2] Appellant's Federal habeas corpus petition challenged: "(1) the ineffective assistance of counsel; (2) the use of an involuntary confession as evidence against him at his trial; (3) the seating of the jury 'en Bank' (sic) without any questioning as to prejudice; (4) the use of an unrelated felony in his trial; (5) the introduction of petitioner's prior criminal record at such a time as to deny him a fair trial; (6) denial of counsel at a critical stage of the proceedings against him; (7) the denial of counsel after his conviction to perfect an appeal." The District Court found that only issue (5) had been previously raised in a state court proceed-

was appealed. Thereafter in September 1967, appellant filed a petition under the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1 et seq., alleging, *inter alia*, the obstruction of his right to appeal and requesting as relief the "right of direct appeal *nunc pro tunc*." At a hearing limited to the issue of appellant's right to appeal, the lower court found that after his trial counsel had withdrawn, appellant had requested the trial court to appoint counsel, but this request was denied. The hearing court further found that appellant at that time was unable to afford counsel for the prosecution of an appeal.[3] On these facts the court concluded that Faison had been denied his *Douglas* rights and he was "granted 45 days to appeal your [petitioner's] initial trial to the State Supreme Court."[4]

---

ing, and it held that issue to have been correctly decided adversely to the petitioner. It declined to consider the merits of the other issues until they had been passed on by the state courts in post-conviction proceedings. It noted parenthetically that petitioner's allegation that he was denied counsel to perfect an appeal, if raised in the state courts, would apparently be a ground for relief under this Court's holding in *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A. 2d 613 (1965).

[3] The record of the PCHA hearing indicates that appellant's trial counsel was provided for him by members of his family; that they failed to pay trial counsel his full fee; and that they were unable to provide further legal assistance to appellant in his desire to appeal his conviction and sentence.

[4] Since a motion for a new trial had been filed by Faison and denied, the court hearing the PCHA petition was correct, on finding a denial of appellant's *Douglas* rights, in stating that appellant was entitled to a direct appeal. (In cases where no post-trial motions have been filed, the hearing court upon finding that a petitioner has been denied his *Douglas* rights should transfer the case to the trial court with instructions to appoint counsel for the petitioner (if indigent) and to permit the filing and arguing of post-trial motions.) Although in the present case, this Court granted an "appeal specially allowed *nunc pro tunc*" upon motion of appellant's counsel for leave to file such an appeal, we believe that this pro-

Before treating the questions presented by this appeal, it is necessary to state briefly the facts surrounding the death of Harold Dennis as they were adduced at trial. All parties agreed that appellant had in fact shot and killed Dennis in the parlor of the Dennis home. The issues at trial were whether the shooting had been in self-defense, and the nature and degree of the homicide involved. The Commonwealth's principal witnesses were Mrs. Effew Dennis, wife of the deceased, and Mrs. Flossie Barksdale, Mrs. Dennis' sister. Mrs. Dennis was present at the time of the shooting and was herself shot twice during the ensuing struggle. At trial, Mrs. Dennis gave an eyewitness account of the incident. According to her narrative, appellant came to their house seeking Mrs. Barksdale; after having joined them for dinner and as he was about to leave their home, he confronted them with a gun and without provocation shot Mr. Dennis.

The bulk of Mrs. Barksdale's testimony, which was discursive and occasionally unresponsive,[5] concerned

cedure was unnecessary, notwithstanding contrary indications in our prior cases. See *Commonwealth v. Stewart*, 430 Pa. 7, 241 A. 2d 764 (1968) and *Commonwealth ex rel. Robinson v. Myers*, 427 Pa. 104, 233 A. 2d 220 (1967). Appellant was clearly entitled to appeal his conviction and sentence to this Court in 1953, and he was entitled to the assistance of counsel in the preparation and prosecution of that appeal. See Pennsylvania Constitution of 1874, Article V, §24 (now Article V, §9, following the constitutional amendments of 1968) ; Act of February 15, 1870, P. L. 15, §1, 19 P.S. §1186; *Douglas v. California*, 372 U.S. 353 (1963) ; and *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A. 2d 613 (1965). Therefore, once there has been a judicial determination that an appellant has been denied his right to appeal with the assistance of counsel, that appellant is entitled, without further motion, to prosecute a timely appeal in the appellate court having jurisdiction. Our designation of such a delayed appeal as an appeal, *"nunc pro tunc"* should in no wise be taken to mean that the appeal is a matter of grace rather than right.

[5] Each of the principal witnesses at trial—Mrs. Dennis, Mrs. Barksdale, and appellant—tended to speak at some length and each

her relationship with appellant. Mrs. Barksdale testified that she had been seeing appellant for some ten months prior to the murder. Their relationship, according to her account, had begun when appellant had followed her home one night after work and raped her; she stated that she continued to see appellant after that time only because he threatened to kill her and her three children if she left him or refused to comply with his wishes. Mrs. Barksdale further testified that appellant had once held her captive in his room for three days, and that in connection with his threats to her he had repeatedly pointed at her the same pistol which he used in the slaying of Dennis. This testimony was presented by the Commonwealth in support of its theory of the murder, viz., that appellant, angered that Mrs. Barksdale had left him, had gone to the Dennis home in search of her; suspecting that Mr. Dennis was assisting Mrs. Barksdale in eluding him, appellant transferred his malice and anger to Dennis and shot him.

The Commonwealth's theory was apparently derived from, and was supported by, a five page statement appellant made to the police when he was apprehended the morning after the slaying. Appellant was arrested in a taproom-restaurant after he had told the owner that he had shot a man, in full anticipation that the police would be called. The statement in question was made to the police some three hours after appellant was apprehended and after appellant had been formally interrogated by the police for approximately one-half

of the attorneys encountered some difficulty persuading the witnesses to limit their testimony to the questions asked. Apparently in response to this situation, the trial judge (Flood, J.) allowed the witnesses on both sides considerable leeway in giving their testimony. In an attempt to facilitate the development of a narrative account of the events in question, the court also allowed the attorneys more freedom in the manner of phrasing their questions than would have been customary.

hour. The statement was given after appellant had been told of the charge on which he had been arrested, warned that anything he said could be used against him, and informed that he was entitled to a lawyer. Appellant in this statement specifically noted that the account contained therein was true and that the statement was given voluntarily. His account of the previous day's events supported his own contention that the slaying was an act of self-defense. The statement was read to the jury by the interrogating officer as part of the Commonwealth's case.[6]

According to the appellant's statement to the police, the facts of the case were as follows: On the day of the murder, Mrs. Dennis told appellant that Flossie would be telephoning her at Mrs. Dennis' home in the afternoon. Appellant thereafter went to the Dennis' but found that Mrs. Barksdale had not been heard from. He then went to her home, let himself in through the front window, and again failing to find her, returned to the Dennis' and had dinner with them. While he was there, Mr. Dennis received a phone call from Mr. Barksdale, Flossie's husband. When Dennis finished speaking with Barksdale, he accused appellant of having broken into the Barksdale home, and appellant heatedly denied the accusation. Dennis then threatened to kill appellant, and advanced on him with an open switch blade knife. When Dennis gave appellant no chance to leave the room, appellant shot him once in the chest. He stated that he had gone to the Dennis' home hoping to find Mrs. Barksdale who he "intended to kill" because "[she] treated me so dirty," and he concluded that "what all the trouble come from was Flossie."

---

[6] The appellant asserts that this statement was involuntary and so improperly admitted into evidence. At p. 448, *infra*, we find this issue to have been waived.

. The case for appellant was predicated on the theory of self-defense. Appellant testified in his own behalf at considerable length and corroborated the narrative which he had given the police in all material respects: He testified that after he had dined with the Dennis' and as he was about to leave their home, Dennis received a phone call. When Dennis hung up, he accused appellant of having broken into the Barksdale home. When appellant denied this, Dennis threatened to kill him, and advanced on him with a switch blade. Appellant testified that he asked Dennis to let him leave, and that he shot Dennis only when he continued to threaten him and when he was some few feet distance from him. Appellant further testified that he never intended to kill Mrs. Barksdale, although he admitted that he may have made comments to the contrary while he was in custody. When cross-examined about his confession which he had given to the police, appellant repeatedly stated that he did not remember signing the statement but that he would not deny that he had made and signed it. He stated that at the time of his arrest, he had been drinking and was upset and not at all himself.

On this appeal, Faison raises four questions for this Court's consideration: (1) whether appellant was denied his constitutional right to the effective assistance of counsel when his attorney raised only three questions on voir dire and directed those questions to the jurors as a panel rather than questioning them individually; (2) whether the introduction of evidence of appellant's prior criminal record—three previous homicide convictions—was a denial of due process; (3) whether the trial court erred in permitting the Commonwealth to introduce, over appellant's objection, allegedly irrelevant and prejudicial testimony of Mrs. Barksdale; and (4) whether the admission into evidence of his statement to the police without a prelimi-

nary determination of its voluntariness by the trial judge outside the presence of the jury was a denial of due process. The threshold problem, however, is the determination of which, if any, of these questions is properly before us at this time.

As indicated above, this is a direct, albeit belated, appeal from the original judgment of sentence imposed upon appellant by the Philadelphia County Court of Oyer and Terminer. In such a *nunc pro tunc* appeal taken pursuant to a finding that the appellant was denied his *Douglas* rights, the appellant may raise only those issues which might have been pressed on a timely appeal. The ordinary standards governing the scope of appellate review are complicated, however, in two respects by the time interval between the judgment of sentence and the *nunc pro tunc* appeal: (1) intervening court decisions which declare new rights, constitutional or otherwise, may affect the grounds of appellant's appeal, providing a basis for relief which was not available during appellant's original appeal period; and (2) post-conviction or collateral proceedings initiated by appellant between sentence and appeal may affect those issues which he may properly press on appeal.

As to the first complicating factor, we hold that an appellant may press on a *nunc pro tunc* appeal an issue premised on a constitutional right which was enunciated subsequent to his original judgment of sentence, provided that this right has been given such retroactive effect that it would have been available to appellant had an appeal been timely filed. See *Commonwealth v. Little,* 432 Pa. 256, 248 A. 2d 32 (1968).[7]

---

[7] We note that a contrary view was expressed in *Commonwealth v. Jefferson,* 430 Pa. 532, 243 A. 2d 412 (1968). The opinion in that case represented the view of only two members of the Court, and a majority of this Court has subsequently held of "no binding precedential value" the statement in that opinion that the

In *Commonwealth v. Dessus*, 423 Pa. 177, 224 A. 2d 188 (1966) a unanimous court, speaking through Mr. Chief Justice BELL, stated that an issue raised for the first time on appeal would be considered "where public policy or the interests of justice require a consideration and determination thereof." Both these considerations dictate that an appellant should be able to press on appeal any issue as to a constitutional right enunciated after his judgment of sentence and given retroactive effect. Were this not the case, the appeal would not be an end to litigation but only a prelude to postconviction proceedings in which the constitutional issue would be raised. To bar an appellant from raising such issues would serve neither the ends of fairness to the appellant nor the policy of expeditiously terminating litigation. See also *Kuchinic v. McCrory*, 422 Pa. 620, 222 A. 2d 897 (1966).

The second problem posed by the time lag between judgment of sentence and a *nunc pro tunc* appeal concerns the effect to be given to intervening collateral proceedings brought by appellant while represented by counsel. Where issues fully cognizable therein have been raised and fully litigated within the meaning of §4 of the Post Conviction Hearing Act, *supra,* it would serve no useful purpose to reconsider such issues upon direct appeal. Similarly, where issues were available to, but were not raised by, petitioner in prior counseled PCHA proceedings, that failure to press the issue may constitute a waiver within the meaning of §4. Section 4 embodies a rule of procedural finality whereby the failure to assert an alleged constitutional deprivation in earlier litigation forecloses the opportunity to challenge that deprivation in a subsequent proceeding.

rights on a *nunc pro tunc* appeal are determined by the law as it existed when a timely appeal would have been filed. See *Commonwealth v. Little*, supra, at p. 260.

*Commonwealth v. Satchell,* 430 Pa. 443, 243 A. 2d 381 (1968) and *Commonwealth v. Mumford,* 430 Pa. 451, 243 A. 2d 440 (1968). Where appellant has waived the opportunity to litigate an issue within the meaning of §4, that waiver shall foreclose later review of the issue in post-conviction proceedings and in *nunc pro tunc* appeals such as the present one. Thus we hold that final litigation or a knowing waiver of an issue cognizable in collateral proceedings will preclude consideration of such issues in an appeal *nunc pro tunc.*

In the light of these principles as to the availability of review, we now consider the issues raised by appellant.

First, appellant contends that the conduct of his trial counsel in raising only three questions in his voir dire examination of the prospective jurors and in examining the jurors as a group rather than individually was a denial of appellant's constitutional right to the effective assistance of counsel. Although the issue thus presented was not raised below and does not involve a constitutional right given retroactive application,[8] the issue is properly before us. To require appellant to raise this issue below, i.e., to require appellant's trial counsel to challenge his own competence at trial or in post-trial motions, would clearly be pointless. Where an appellant is represented in the appeal *nunc pro tunc* by counsel other than the trial counsel and an issue of competent counsel arguably appears in the record, the considerations set forth in *Commonwealth v. Dessus, supra,* dictate that such an issue should be considered.

In the present case, however, while the issue of competent counsel is properly before us, appellant's argu-

[8] The constitutional right to the effective assistance of counsel has been secure at least since *Powell v. Alabama,* 287 U.S. 45 (1932).

ment on this point is clearly without merit. We have held that the effective assistance of counsel is not denied so long as the course of action taken by counsel has some reasonable basis designed to advance his client's interest. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 345 A. 2d 349 (1967); *Commonwealth v. Walker*, 433 Pa. 124, 130, 249 A. 2d 283 (1969). We conclude that this standard was satisfied by counsel's resort to an expeditious voir dire examination of the jurors as a panel where only three identical questions were to be raised, and we find no constitutional imperative which would require counsel to question the jurors on other, unspecified grounds.[9] Although the practice in capital cases of placing each prospective juror under oath and examining him individually before accepting or rejecting him is one of long standing in this Commonwealth, such an individual examination was not required at the time of appellant's trial.[10] See *Commonwealth v. Cephas*, 213 Pa. Superior Ct. 278, 279, 247 A. 2d 662 (1968); *Commonwealth v. Exler*, 61 Pa. Superior Ct. 423 (1915). We

---

[9] Defense counsel asked whether any of the jurors knew the appellant or either of the attorneys involved in the case and whether they had any independent knowledge of the case. He also explained that evidence of appellant's prior criminal record would be introduced for the limited purpose of assisting jurors in fixing the penalty if defendant were found guilty and asked the jurors whether they would feel unable to limit their consideration of this record of prior offenses to the purpose for which it was intended. The District Attorney also conducted his voir dire (which was still more limited) before the jurors sitting as a panel.

[10] Under Rule 1106 of the Rules of Criminal Procedure, this practice has been required in capital cases since August 1, 1968. The comments to Rule 1106 indicate, however, that even in capital cases the voir dire examination may be waived if this waiver is the result of affirmative agreement by both the defendant and the Commonwealth. (In noncapital cases, the group examination of prospective jurors is allowed by Rule 1107, with the individual examination a permissible alternative.)

hold that appellant's right to the assistance of counsel was not abridged by the method in which the voir dire was conducted.

Second, appellant contends that the introduction of evidence of his prior criminal record under the then prevailing "Parker rule" procedure was a denial of due process. This issue was raised in both of appellant's habeas corpus petitions, and both the state and the federal courts decided the point adversely to petitioner on the authority of *Spencer v. Texas*, 385 U.S. 554 (1965), *reh. denied*, 386 U.S. 969 (1967). Under the facts of this case, we conclude that appellant has had a full judicial determination of this issue.[11]

Appellant's third contention is that the trial court erred in refusing appellant's motion for withdrawal of a juror and declaration of a mistrial because of the testimony of Mrs. Barksdale; appellant challenges that testimony on the ground that it was irrelevant, prejudicial and tended to show that appellant had committed prior unrelated crimes. Appellant objected at trial to Mrs. Barksdale's testimony,[12] and the prejudicial char-

---

[11] We note that subsequent to the lower court's denial of appellant's state habeas corpus petition, this Court has held that *Spencer v. Texas, supra,* does not preclude a state court from finding that the introduction of a defendant's prior criminal record was so prejudicial under the facts of the case that it amounted to a denial of due process. See *Commonwealth v. Chapasco,* 436 Pa. 193, 258 A. 2d 638 (1969). We have reviewed the record in this case and are satisfied that under the standards set forth in the *Chapasco* case, appellant was not denied due process. See also *Commonwealth ex rel. Marino v. Myers,* 419 Pa. 448, 214 A. 2d 491 (1965), in which, like the case at hand, the killing was admitted and the issue at trial was the existence of a defense and the degree of the homicide.

[12] As noted above, the testimony of Mrs. Barksdale was rather discursive. Given the character of her statements, appellant's trial counsel was hard put to object to specific responses, and the trial court appears to have understood and accepted these objections as being addressed to the whole course of the witness' testimony concerning her relationship with appellant.

acter of that testimony was raised in appellant's new trial motion. Accordingly, the admissibility of that testimony is properly before us.

Beyond question, Mrs. Barksdale's testimony was often unresponsive and highly colored by the obvious ill-will she bore the appellant. As discussed above, the Commonwealth's theory of the murder was that appellant's malice toward and intent to kill Mrs. Barksdale was transferred to Mr. Dennis and that this transfer of hostility provided the explanation for an otherwise motiveless killing. Under this theory, Mrs. Barksdale's testimony was relevant to the proof of appellant's motive and was therefore admissible.

It is well settled that "[e]vidence to prove motive, or intent, or plan, or design, or ill will or malice is always admissible." *Commonwealth v. Kravitz,* 400 Pa. 198, 216, 161 A. 2d 861 (1960), *cert. denied,* 365 U.S. 846 (1961); *Commonwealth v. Boden,* 399 Pa. 298, 159 A. 2d 894 (1960). Further, evidence of prior occurrences (e.g., previous threats) and prior offenses, if they are related to the offense for which defendant is on trial, may be admitted to show malice, motive, or intent. See *Commonwealth v. Minoff,* 363 Pa. 287, 69 A. 2d 145 (1949); *Commonwealth v. Burdell,* 380 Pa. 43, 110 A. 2d 193 (1955); and *Commonwealth v. Boulden,* 179 Pa. Superior Ct. 328, 116 A. 2d 867 (1955). In the present case, Mrs. Barksdale's testimony as to appellant's threats to her and his rape of her were relevant to the task of establishing appellant's settled pattern of malice as to her. The familial relationship of Dennis to Mrs. Barksdale, the fact that appellant had been seeking Mrs. Barksdale at the Dennis home and apparently believed that the Dennis' knew her whereabouts, and the fact that the murder followed Dennis' phone conversation with Mr. Barksdale are factors which, in our view, support the connection which the Commonwealth intended to establish between appel-

lant's settled pattern of malice toward Mrs. Barksdale and his slaying of Dennis.

Moreover, the trial judge carefully and explicitly instructed the jurors to disregard any opinions expressed by Mrs. Barksdale and any statements she made concerning appellant's alleged prior crimes.[13] On the facts of this case, we conclude that Mrs. Barksdale's testimony as to appellant's prior conduct was relevant to proving his malice toward her, and that given her relationship to Dennis proof of such malice was admissible on the question of appellant's motive for slaying Dennis.

A motion for the withdrawal of a juror is addressed to the sound discretion of the trial judge. *Richman v. Watkins,* 376 Pa. 510, 103 A. 2d 688 (1954). We find no abuse of discretion in the refusal to grant that motion here, nor can we find that admission of the questioned testimony was error.

Appellant's final contention is that the admission into evidence of his statement to police without a prior determination by the trial court that the statement was voluntary constituted a denial of due process under the terms of *Jackson v. Denno,* 378 U.S. 368 (1964).[14] The

---

[13] Illustrative of its charge is the following instruction given by the trial judge: "Mrs. Barksdale and Mrs. Dennis were both pretty emotional on the stand. They said some things which you should completely disregard. Mrs. Barksdale, for instance, said he raped her. She didn't even say what she meant by that. Obviously, if he was living with her for a long time, and the evidence is not too clear as to just what happened, that isn't very likely. At any rate, she said nothing more about it and you should completely lay that aside from the situation as having nothing to do with your final decision."

[14] Appellant also contends that the fact that the statement was given while appellant was not represented by counsel was a denial of due process. This argument is without merit. See *Escobedo v. Illinois,* 378 U.S. 478 (1964) ; *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965) ; *Miranda v. Arizona,* 384 U.S. 436 (1966) ; *Johnson v. New Jersey,* 384 U.S. 719 (1966). We note, moreover,

rule enunciated by *Jackson* has been given retroactive effect, and this issue would therefore ordinarily be available to appellant. *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965). Subsequent to the date of the *Jackson* decision, however, appellant initiated state habeas corpus proceedings in which he was represented by counsel. Appellant failed to question the voluntariness of his confession in those proceedings and, absent extraordinary circumstances which are not here alleged, he must be deemed to have waived the issue within the meaning of §4 of PCHA. As indicated above, such a waiver is deemed a knowing bypass of an available state remedy; it precludes appellant from raising the issue in the present appeal. *Commonwealth v. Satchell, supra.* See, also, *Henry v. Mississippi,* 379 U.S. 443 (1965).

Judgment affirmed.

Mr. Chief Justice BELL concurs in the result.

---

that appellant's counsel candidly states in his brief that the issue is raised because "it was raised by Appellant in his petition under the Post Conviction Hearing Act, which petition was filed in propria persona."