**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KASHAWN DIVINE FLOWERS | : | |
| | : | |
| Appellant | : | No. 190 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 21, 2021,
in the Court of Common Pleas of York County,
Criminal Division at No(s):  CP-67-CR-0001962-2019.

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY OLSON, J.:          **FILED: JULY 25, 2023**

Appellant, Kashawn Divine Flowers appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder.[1]  We affirm.

On February 4, 2019, the Commonwealth charged Appellant with criminal homicide and possession of firearm prohibited following the shooting death of Hezekiah Walker on August 18, 2014.  Eventually, the case was set for trial on one count each of first-degree and third-degree murder.

On February 6, 2020, the Commonwealth moved *in limine* to admit testimony from two cooperating witnesses about Appellant's gang affiliation and related gang activity.  It stated that Appellant associated with the South

---

[1] 18 Pa.C.S.A. § 2502(a).

Side gang in York City, which had a dispute with the West Side gang after the 2013 killing of Joseph "Plaga" Gomez. The Commonwealth outlined its witnesses' expected testimony that on August 17, 2014, Dysheem Jones gave Appellant a handgun that Jones used earlier that day, and then Appellant went to the West Side "lurking" for the "opposition"—looking to kill an opponent. The witnesses would describe that Appellant told them that he saw Walker, asked where he was from, and shot him in the head. The witnesses would also state how their group would dispose of handguns by putting them in safes or burying them.

Appellant responded on February 28, 2020, objecting to (a) testimony that he was "in a gang," (b) references to the South Side or West Side, (c) testimony about "lurking" or "opposition," and (d) testimony about the killing of Joseph Gomez in 2013. Response, 2/28/20, at 3. At argument before the trial court on May 27, 2021, Appellant further emphasized his position that the term "gang" was unnecessary and prejudicial.

The trial court indicated its concern that the Commonwealth witnesses would testify as to general actions of other gang members in disposing of guns. N.T., 5/27/21, at 5–6. However, the trial court ruled that the term "gang" was not overly prejudicial and granted the Commonwealth's first motion *in limine* in full. **Id.**

On October 1, 2021, the Commonwealth filed its second motion *in limine*, seeking to admit expert testimony about gangs. Appellant filed a

response in opposition on October 12, 2021. The trial court granted the motion the same day.

The case proceeded to a jury trial on October 18–21, 2021. The trial court detailed the pertinent facts at trial as follows:

> On August 18, 2014, at 6:00 A.M. Officer Derrick Millhouse responded to the 300 block of West King Street [in York City] for reports of a possible shooting and a man down. When Officer Millhouse arrived at the scene, he observed the victim with an obvious gunshot wound to the head [lying] on the sidewalk with a large pool of blood around his head. Officers secured the scene and found spent shell casings, bullet fragments, and damage to one of the nearby houses. There were no eyewitnesses of the shooting, no gun was found, and no DNA evidence was recovered from the scene. On August 18, 2014, Brenda McCleary was living [nearby] and heard three gunshots around 2:30 a.m. outside of her home. Additionally, Edward Daniels who lives [nearby] heard gunshots from his home on the date of the incident between 2:40 a.m. and 3:00 a.m.

> The victim was identified as Hezekiah Walker, and Dr. Samuel Land of Forensic Pathology Associates, an expert in forensic pathology, performed an autopsy on Hezekiah Walker and determined the cause of death was a gunshot wound to the head. Additionally, the autopsy report indicated that Hezekiah Walker sustained a perforating gunshot wound to his right leg. Dr. Land ruled Hezekiah Walker's manner of death a homicide.

> Detective Anthony Fetrow of the York City Police Department was assigned as the lead detective to investigate the death of Hezekiah Walker. Detective Fetrow determined Hezekiah Walker's last known location was 600 West College Avenue, a corner house on West Street and College Avenue. 600 West College was the home of Zach Williams, Hezekiah Walker's friend, which was next to a large business. Detective Fetrow obtained the large business['] surveillance video from August 18, 2014 to determine Hezekiah Walker's whereabouts between the time he left Zach William[s'] home and when the shooting occurred. Hezekiah Walker was seen in camera view for approximately three minutes from 2:20 to 2:23 a.m. Next, Detective Fetrow obtained footage from St. Paul's Evangelical Congregational Church at 450

- 3 -

West King Street in York which showed Hezekiah Walker walking on the south sidewalk toward Penn Street [at 2:35 a.m.] Additionally, Detective Fetrow obtained surveillance video from Elite Property Management on the corner of Penn and King Street[s] which showed Hezekiah Walker at 2:37 a.m. on August 18, 2014. None of the video surveillance obtained showed Hezekiah Walker having contact with any other individuals.

Hezekiah Walker's cell phone was found at the crime scene and [o]fficers conducted a forensic analysis to review any communication that Hezekiah had in the hours leading up to his death. Hezekiah Walker exchanged text messages with two ex-girlfriends between 2:33 a.m. and 2:39 a.m. Based on the surveillance video and text message communications, [Detective] Fetrow was able to determine the shooting occurred sometime around 2:37 a.m. An analysis of Appellant's cell phone records indicated that he was near the crime scene between 2:27 a.m. and 2:46 a.m. on August 18, 2014, the day the shooting occurred.

Through an investigation, Detective Wesley Kahley, an expert on gang culture and gang affiliation, determined that Appellant represented himself as a member of the [S]outh [S]ide criminal street gang in York. Detective Kahley reviewed Appellant's social media posts and conversation during his investigation. Appellant made various posts claiming his association with the [S]outh [S]ide criminal street gang including: (1) "[Ots] be my squad," short for "only the south be my squad," (2) "ClaimGangLife," and (3) "#600K," indicating disrespect to opposition as "600" refers to the [W]est [S]ide and "K" is short for "kill." Additionally, Appellant has a "F-O-E" tattoo meaning "family over everything," indicative of Appellant's involvement in gang culture.

Acquaintances of Appellant, Marcos Martinez and Raymond Bruno Carrasquillo, testified that Appellant and other individuals from the South Side used the term or phrase "1017" to refer to their friend, Joseph Gomez, also known as Plaga Two Times ("Plaga"), who passed away in April of 2013, during a shootout with Flair Griggs, an individual who hung out in the "West End." [Martinez and Carrasquillo] testified that … "beef" and "ops," were two terms used to describe the opposition between the "South Side" and "West Side" "groups" of York. Plaga's death caused beef between the South Side and West Side because it made a lot of people angry, including Appellant. Appellant had two tattoos in memory of Plaga's death, one that stated, "RIP Plaga," and

another "1017." [Martinez] went on to testify that Appellant "wanted to get revenge" for Plaga's death, and [Carrasquillo] testified that Appellant was "revengeful" of Plaga's death.

Additionally, [Martinez] testified that he and other individuals from the South Side were involved in a shootout on August 17, 2014, with individuals he believed to be from the West End. On the same day of this shootout, Appellant came to [Martinez's] home around 12:00 in the afternoon and retrieved a gun, specifically a Colt .45, which was used in the earlier shootout. Later that night, Appellant returned to [Martinez's] home and explained that he drove out West looking for "ops" and shot someone in the head after the individual told Appellant that he was from out West. [Firearm toolmark analysis revealed that the cartridge casings from the shooting on August 18 were discharged from one of the same guns as the earlier shootout on August 17.]

[Martinez] observed Appellant to be "hype[d]," "excited," and "happy" when informing [Martinez] and other South Side individuals that he shot someone from the West End. While incarcerated, Appellant was bragging to [Carrasquillo] that he had a "head shot," meaning he shot someone in the head and killed them, on King Street. Appellant proceeded to tell [Carrasquillo] that on August 18, 2014, he was very emotional and decided that he would shoot whoever he saw walking on the West Side. [Carrasquillo] said Appellant appeared happy and excited about the shooting.

Trial Court Opinion, 4/18/22, at 1–5 (record citations omitted).

The jury found Appellant guilty of first-degree murder. On December 21, 2021, the trial court sentenced Appellant to life in prison without the possibility of parole. Appellant filed a timely post-sentence motion, which the trial court denied without opinion on January 3, 2022. Appellant timely appealed. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises five issues on appeal:

A. Was the evidence insufficient to prove, beyond a reasonable doubt, that [Appellant] committed First Degree Murder where: (a) there was no eyewitness to the shooting (b) there was no forensic evidence attributable to [Appellant], e.g., fingerprints or DNA, found either on the victim or even in the vicinity of the offense; (c) testimony from two individuals purportedly implicating [Appellant] in the offense was so corrupt, polluted and contradictory as to make any verdict based thereon unreliable and pure conjecture, and (d) the cell triangulation testimony was, at best, speculative, thus requiring the conviction be reversed and vacated?

B. Alternatively, was the verdict against the weight of the evidence and so contrary to the evidence as to shock one's sense of justice, thus requiring that the conviction be reversed, and a new trial granted?

C. Did the trial court abuse its discretion, err and infringe on [Appellant's] right to due process of law as guaranteed by the [federal and state constitutions] by granting the prosecution's motion in limine to admit at trial certain testimony pursuant to Rule 404(b) where: (a) the testimony was not relevant, as it did not make any material fact at issue more of less probable; (b) the testimony was rank propensity evidence which sought to establish [Appellant] as a member of a "criminal street gang" who had the propensity to engage in violent acts and who may have been involved in other uncharged crimes; (c) none of the "permitted uses" set forth in Rule 404(b)(2) which would permit this propensity evidence applied; and (d) even if some permitted use of the bad character evidence existed, the probative value of the evidence was outweighed by its potential for unfair prejudice, thus requiring that the conviction be reversed and a new trial granted?

D. Did the trial court abuse its discretion, err and infringe on [Appellant's] right to due process of law as guaranteed by the [federal and state constitutions] by allowing the prosecution to present expert testimony concerning gang activities and [Appellant's] alleged gang affiliation where: (a) to the extent that any evidence concerning [Appellant's] involvement with a gang was relevant, such type of evidence is not beyond the knowledge of an average layperson, and expert testimony was not needed to help the jury understand the evidence or determine a fact in issue; and (b) the expert testimony only emphasized and bolstered the general nature and

dangerousness of gang activity and the propensity of gang members to engage in criminal conduct, thus requiring that the conviction be reversed and a new trial granted?

E. Did the trial court abuse its discretion, err and infringe on [Appellant's] right to due process of law as guaranteed by the [federal and state constitutions] by denying [Appellant's] motion for a mistrial where the prosecution's expert on gang activities and [Appellant's] alleged gang affiliation testified that gangs are involved in criminal activity, specifically referencing drug activity, an offense with which [Appellant] was not charged, thus requiring that [Appellant's] conviction be reversed and a new trial granted?

Appellant's Brief at 7–8 (excess capitalization omitted).

## A. Sufficiency of the Evidence

Appellant's first claim is that the evidence was insufficient to establish his identity as the person who killed Walker. He emphasizes the unreliability of the evidence against him. Appellant notes that Martinez and Carrasquillo had motive to testify favorably for the Commonwealth and gave inconsistent accounts of what Appellant told them. He further challenges the accuracy of the cell site location information that placed him in the vicinity of the shooting. Appellant concludes that in this case, the jury's verdict could only be the result of conjecture and must be overturned.

A sufficiency challenge "presents a question of law and is subject to our plenary review under a *de novo* standard." **Commonwealth v. Moore**, 263 A.3d 1193, 1205 (Pa. Super. 2021) (citing **Commonwealth v. Smith**, 234 A.3d 576, 581 (Pa. 2020)). We determine "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime

beyond a reasonable doubt." ***Commonwealth v. Williams***, 255 A.3d 565, 578 (Pa. Super. 2021) (quoting ***Commonwealth v. Smith***, 97 A.3d 782, 790 (Pa. Super. 2014)). A jury is generally "free to believe some, all, or none of the Commonwealth's evidence" and to resolve inconsistencies in favor of either party. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1078 (Pa. 2017) (citing ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011)). Identity, like any element of a crime, can be established by evidence that is circumstantial and which "need not be positive and certain." ***Id.*** at 579 (quoting ***Commonwealth v. Jones***, 954 A.2d 1194, 1197 (Pa. Super. 2008)).

However, our Supreme Court has recognized "atypical situations" in which "the entire body of evidence introduced at trial which furnished the basis for an appellant's conviction is so deficient that it does not reasonably support a finding of guilt beyond a reasonable doubt, as a matter of law." ***In the Interest of J.B.***, 189 A.3d 390, 409 (Pa. 2018) (citing ***Commonwealth v. Jackson***, 66 A.2d 841, 843 (Pa. 1949)). In such a case, the reviewing court must reject the conjectural findings of fact and find the evidence insufficient. ***Id.*** (citations omitted).

Here, Martinez and Carrasquillo testified that Appellant told them that he shot and killed someone on the west side of York, which is consistent with Walker's death. Their testimony, *if believed*, was sufficient to identify Appellant as the shooter. We hold that this testimony is not so inherently unreliable that it is insufficient as a matter of law. Notably, both witnesses

stated that they had abandoned their gang lifestyles and acknowledged any expectation of favorable treatment. Further, their testimony was corroborated by common elements between what Appellant told them, as well as the identification of the casings down the street from where Walker was shot coming from the same gun used in the shootout the day before.

The inconsistencies in testimony were up to the jury to resolve, rather than removing the case from consideration. *Jacoby*, *supra*. As to Martinez and Carrasquillo's testimony that the shooting occurred around 11 p.m., not 2:30 a.m., this reflects Appellant's own misperception of the time he told them that he shot Walker. And while McCleary and Daniels did not recall hearing any exchange of words before the early morning gunfire, this is logical given the time of the shooting and relative volume; a voice, even one shouting down the block, may not be heard the same way as a .45-caliber gunshot. The totality of the evidence, viewed in a light most favorable to the Commonwealth as verdict winner, was therefore sufficient to identify Appellant as the person who killed Walker. Appellant's first claim fails.

### B. Weight of the Evidence

Appellant's second claim concerns the denial of his post-sentence motion for a new trial based on the weight of the evidence. He argues that the trial court abused its discretion by not assessing whether the verdict shocked its sense of justice, instead merely deferring to the jury's findings. Had the trial court appropriately reviewed the evidence, Appellant contends,

it would have found that the jury's verdict was so contrary to the weight of the evidence as to shock the trial court's sense of justice.

Our Supreme Court has explained the standard to be applied by a trial court in ruling on a weight-of-the-evidence challenge as follows:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Brown**, 648 A.2d 1177 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Thompson v. City of Phila.**, 493 A.2d 669, 672 (Pa. 1985). A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Id.** at 674.

**Commonwealth v. Widmer**, 744 A.2d 745, 751–52 (Pa. 2000) (citation format altered). Under this standard, a trial court awards relief upon a finding that "the jury's verdict is so contrary to the weight of the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Jacoby**, 170 A.3d at 1080 (quoting **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013)). This stands in contrast to an assessment of evidentiary sufficiency, which draws reasonable inferences in favor of the Commonwealth and accepts that jurors are free to believe any evidence. **Id.** at 1078.

- 10 -

An appellate court, in turn, reviews whether the trial court abused its discretion in ruling on the weight claim, not whether the verdict itself was against the weight of the evidence. *Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa. Super. 2021) (citing *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)). "An abuse of discretion is not merely an error of judgment, but is rather [1] the overriding or misapplication of the law, [2] the exercise of judgment that is manifestly unreasonable, or [3] the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (quoting *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017)). It is a misapplication of the law, and thus an abuse of discretion, for a trial court to deny a **weight** challenge based only on evidentiary **sufficiency**. *Commonwealth v. Sullivan*, 820 A.2d 795, 806–07 (Pa. Super. 2003). This Court's role is then to remand for the trial court to apply the proper standard. *Id.* at 807 n.12 (citing *Widmer*, 744 A.2d at 752).

In reviewing this issue, the trial court set forth the proper legal standard to be followed in assessing a weight of the evidence claim. Trial Court Opinion, 4/18/22, at 9. ("A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed. Exclusively, the finder of fact is to determine the weight of the evidence and is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. … When reviewing a challenge to the weight of the evidence, the verdict may be reversed only if it is so contrary

to the evidence as to shock one's sense of justice." (footnotes, citations and quotation marks omitted)).  In applying this correct standard to the case *sub judice*, the trial court found as follows:

> The elements and supporting evidence for the charge[] of [f]irst-[d]egree [m]urder are listed in section I [of the trial court's 1925(a) opinion].[2]  The jury, sitting as the finder of fact for the charges, was free to determine the credibility of all witnesses and to make inferences based on all the evidence presented at trial. Appellant states that "the cell phone triangulation evidence was, at best, speculative," but fails to support this statement with any facts or argument; however, the jury was free to determine the credibility of the testimony related to Appellant's cell phone records.  Further Appellant alleges that "the testimony of [Marcos] Martinez and [Raymond] Bruno-Carrasquillo was so corrupt, polluted and incredible that no reliable jury verdict could be premised on this testimony;" however, the jury, as factfinder was free to determine the credibility of each witness, and likely found both Martinez and Bruno-Carrasquillo to be credible witnesses, and thus found that Appellant informed both Martinez and Bruno-Carrasquillo that he has a "headshot" on the [W]est [S]ide on the same date that Hezekiah Walker was killed by a gunshot wound to the head on the [W]est [S]ide.

---

[2] In ruling on the sufficiency of the evidence challenge raised by Appellant, the trial court stated as follows:

> [T]he evidence established that Appellant wanted revenge against the [W]est [S]ide for the death of his friend, [Joseph Gomez, also known as Plaga Two Times], and he told at least two individuals that he shot someone on the [W]est [S]ide the same day that Hezekiah Walker was shot and killed by a gun shot wound to the head on the [W]est [S]ide.  Appellant outwardly represented himself as being associated with the [S]outh [S]ide criminal street gang in York and publicly displayed his affiliation with the [S]outh [S]ide by posting about killing individuals on the [W]est [S]ide, the [S]outh [S]ide's opposition [].  Additionally the cell phone analyst testimony and evidence placed Appellant in the vicinity of the crime scene on the date and time of the shooting."

Trial Court Opinion, 4/18/22, at 8 (footnotes omitted).

- 12 -

*Id.* at 9-10. Although the trial court did not expressly state that, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice, or that the jury's verdict is so contrary to the weight of the evidence as to shock one's sense of justice, it is clear that the trial court applied the correct legal standard and did not abuse its discretion in denying Appellant's weight of the evidence claim. Accordingly, Appellant's second issue merits no relief.

### C. Evidence that Appellant Was in a Gang

Appellant's third claim is that the trial court erred in admitting testimony about his gang affiliation. He submits that this evidence should have been excluded under Pennsylvania Rule of Evidence 404 because it showed only that he had a propensity for violence and was not relevant for any permissible purpose. Further, Appellant argues that the potential for unfair prejudice from evidence that he was in a violent "criminal street gang" outweighed any probative value. He posits that the evidence was so pervasive and inflammatory that it stripped him of the presumption of innocence and denied his right to a fair trial, despite the trial court's limiting instruction.

The Commonwealth responds that the trial court properly admitted evidence that Appellant was affiliated with a gang. It explains that the evidence was relevant to prove Appellant's motive and to show the sequence of events leading up to the shooting. The Commonwealth also argues that

the trial court made no error in finding that the probative value of the evidence outweighed the potential that it would unfairly prejudice Appellant.

This Court reviews pre-trial evidentiary rulings to determine whether the trial court abused its discretion. **Frazer v. McEntire**, 265 A.3d 777, 783 (Pa. Super. 2021) (citing **In re Fiedler**, 132 A.3d 1010, 1023 (Pa. Super. 2016)).

In general, evidence is admissible only if it is relevant. Pa.R.E. 402. "Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence." **Commonwealth v. Lehman**, 275 A.3d 513, 519 (Pa. Super. 2022) (quoting **Commonwealth v. Christine**, 125 A.3d 394, 398 (Pa. 2015)); **see** Pa.R.E. 401. In a criminal case, evidence of motive is always relevant. **Commonwealth v. Gwaltney**, 442 A.2d 236, 241 (Pa. 1982) (citing **Commonwealth v. Faison**, 264 A.2d 394 (Pa. 1970)).

Rule 404 provides for the exclusion of certain evidence that otherwise meets the test for relevance:

> (a) **Character Evidence.**
>
> (1) *Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
> \*     \*     \*
>
> (b) **Other Crimes, Wrongs, or Acts.**
>
> (1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

> In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(a)(1), (b)(1)–(2). Under this rule, the Commonwealth may not introduce evidence solely to show that the defendant has a "propensity for committing criminal acts." *Commonwealth v. Hairston*, 84 A.3d 657, 665 (Pa. 2014) (citing Pa.R.E. 404(b)(1) and *Commonwealth v. Lark*, 543 A.2d 491 (Pa. 1988). However, subject to the balancing test of Rule 404(b)(2), evidence of a defendant's other acts can be admitted if it is relevant for another purpose, including motive and the "*res gestae* exception." *Id.* A jury is presumed to follow instructions to consider evidence of a defendant's "other act" only for one of these limited purposes. *E.g.*, *Commonwealth v. Arrington*, 86 A.3d 831, 845 n.11 (Pa. 2014) (citing *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001)).

Pennsylvania courts have previously addressed admissibility of the "other act" of being a gang member. Gang membership is relevant to prove motive to kill, such as killing a member of a rival gang. *Commonwealth v. Gwaltney*, 442 A.2d 236, 241 (Pa. 1982)[3] (citing *Commonwealth v. Faison*, 264 A.2d 394 (Pa. 1970)); *Commonwealth v. Blackwell*, 363 A.2d 1316, 1317 (Pa. Super. 1976). However, such evidence of motive is not limited to cases where the victim was in a rival gang. For example, when a non-gang victim stole drugs from a prospective gang member, a defendant's

---

[3] We cite cases from before the adoption of the Pennsylvania Rules of Evidence mindful that the Rules were not intended to change existing law. *See Commonwealth v. Minich*, 4 A.3d 1063, 1072 (Pa. Super. 2010).

- 15 -

gang membership was relevant evidence of his motive for killing the victim as a gang enforcer. **Commonwealth v. Reid**, 642 A.2d 453, 461 (Pa. 1994). As another example, a defendant's gang membership was relevant to explain his participation in shooting at a non-gang member who had sold fake drugs to a gang member's girlfriend. **Commonwealth v. Wilson**, No. 1470 EDA 2019, 2020 WL 2315616, at *5–7 (Pa. Super. May 11, 2020) (unpublished memorandum).[4] Notably, the relevance of gang membership is not limited to proof of a criminal conspiracy, which is a separate purpose than proof of motive to kill. **See Gwaltney**, 442 A.2d at 241 (describing these purposes as two reasons evidence of gang membership was properly admitted at trial).

Here, Appellant's gang membership was relevant as evidence of his motive for killing Walker. The Commonwealth's theory at trial was that Appellant went to the West Side territory and shot the first person he saw there. That Appellant was in the South Side gang makes this more likely and helps explain his motive in doing so—revenge over the death of Plaga the previous year at the hands of a West Side gang member.

Further, the trial court did not abuse its discretion in balancing the probative value and potential for unfair prejudice stemming from evidence that Appellant was in the South Side gang. N.T., 5/27/21, at 5–6. The court addressed concerns about the breadth of the Commonwealth's evidence and

---

[4] This Court may cite non-precedential decisions filed after May 1, 2019 for their persuasive value. Superior Court Operating Procedures § 65.37.

found that using the word "gang" would not be overly prejudicial.[5]  Moreover, the trial court instructed the jury that it could consider the evidence of Appellant's gang involvement only as proof of motive.  N.T., 10/20/21, at 394.  We presume that the jury was able to follow this instruction and thus conclude that the trial court did not abuse its discretion in applying the Rule 404(b)(2) balancing test.  **Arrington**, **supra**.

Appellant's third claim fails.

### D. Expert Testimony on Gangs

Appellant's fourth claim is that the trial court erred in allowing testimony from Detective Kahley, who was qualified as an expert in gang membership affiliation and identification in York City, and who concluded that Appellant

---

[5] The only witness who used the word "gang" was Detective Kahley, who identified the South Side group as a "**criminal street** gang."  **E.g.**, N.T., 10/20/21, at 338 (emphasis added).  We note that "criminal street gang" is a well-defined term in federal law and several state statutes.  18 U.S.C. § 521; **see United States v. Green**, 618 F.3d 120, 123 (2d Cir. 2010) (rejecting a challenge to the federal definition); **see, e.g.**, Alaska Stat. Ann. § 11.81.900(b)(13); Cal. Penal Code § 186.22(f); Md. Crim. Law § 9-804 (amended 2020 to replace "criminal gang" with "criminal organization"); N.J. Stat. Ann. § 2C:33-29.  By contrast, Pennsylvania law only defines a "criminal gang" in an offense that was not charged here.  18 Pa.C.S.A. § 5131(e); **see** 42 Pa.C.S.A. § 9720.4 (sentencing enhancement).

Appellant did not object to Detective Kahley's use of the phrase "criminal street gang" at trial or in his post-sentence motion.  He first challenged the admissibility of this phrase in his Rule 1925(b) statement.  This was too late for the trial court to remedy any heightened prejudice caused by the detective's use of this legal term of art.  Therefore, Appellant waived any challenge to the phrase "**criminal street** gang."  **See Commonwealth v. Mason**, 130 A.3d 601, 639 & n.47 (Pa. 2015) (finding waiver where a defendant first raised a claim in his Rule 1925(b) statement).

was in the "South Side Criminal Street Gang." ***See*** N.T., 10/20/21, 320–338. Appellant contends that Detective Kahley's testimony was not necessary or helpful for the jury to understand any fact in issue. Given the testimony from Martinez, Carrasquillo, and Detective Fetrow, Appellant submits that allowing Detective Kahley's inflammatory, prejudicial testimony was reversible error.

The Commonwealth responds that Detective Kahley's expertise went beyond that of a layperson and that it was needed to prove Appellant's gang affiliation. It adds that the trial court properly instructed the jury to minimize any prejudice stemming from the evidence that Detective Kahley used to identify Appellant as a member of the South Side gang.

As with other evidence, we review the admission of expert testimony to determine whether the trial court abused its discretion. ***Commonwealth v. Huggins***, 68 A.3d 962, 965 (Pa. Super. 2013) (citing ***Commonwealth v. Watson***, 945 A.2d 174, 176 (Pa. Super. 2008)). Pennsylvania law permits expert testimony where:

> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Testimony from an appropriately qualified expert "is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the

average layman." ***Commonwealth v. Williams***, 274 A.3d 722, 729 (Pa. Super. 2022) (quoting ***Commonwealth v. Duffey***, 548 A.2d 1178, 1186 (Pa. 1988)).

Here, Appellant's gang affiliation was relevant as evidence of his motive for shooting Walker, the first person he encountered when he went to the West Side in revenge for the death of Plaga. ***Gwaltney***, ***supra***. It was therefore a fact in issue in determining Appellant's guilt. Furthermore, Detective Kahley possessed specialized knowledge beyond that of an average layperson that he used to identify Appellant as a member of the South Side gang. The detective explained that to identify gang members, he used the FBI's process that includes consideration of numerous criteria. N.T., 10/20/21, at 328. Based on his review of these criteria, he concluded that Appellant represented himself as a "member of the South Side Criminal Street Gang in York." ***Id.*** at 328–338 (describing factors).[6]

While other witnesses provided information about the affiliated groups in York City and the background of Plaga's death, Detective Kahley's expertise

---

[6] In his reply brief, Appellant notes that Detective Kahley opined that certain hashtags meant "criminal activity related to the gang life," when they were really titles of mix tapes by a rapper. Appellant did not challenge this aspect of the detective's testimony at trial. He did not cross-examine Detective Kahley at all. We note that the trial court instructed the jury that another one of Appellant's posts was just song lyrics by the same rapper, which was "not to suggest that Appellant in any way has done anything other than pirated the lyrics of a rap song relative to an incident that occurred in York City." N.T., 10/20/21, at 314. ***Cf. Commonwealth v. Williams***, 245 A.3d 710, 722 & n.17 (Pa. Super. 2021) (finding a cautionary instruction mitigated any unfair prejudice stemming from a jail letter and rap song lyrics used to establish the defendant's identity as the shooter).

filled in the gap of concluding that Appellant was a member of the South Side gang. Because this was proper expert testimony, the trial court did not abuse its discretion in granting the Commonwealth's motion *in limine* to admit it.

Appellant's fourth claim fails.

### E. Mistrial

Appellant's fifth claim is that the trial court erred in denying his motion for mistrial after Detective Kahley mentioned drugs. The relevant excerpt of testimony is as follows:

> [Assistant District Attorney Lombardo:] I would like to draw your attention to 2014 and 2013 in York City. Were there gangs in York City at that time?
>
> [Detective Kahley:] Yes. Throughout my career, there have been gangs in York City.
>
> Q. What kind of gangs have there been?
>
> A. Our biggest problems come from local criminal street gangs, which you also see the national gangs, such as Bloods, Crips, Latin Kings. Those forms of group[s] that come to our area. We really saw a rise in the mid-'90s of our local street gangs that were kind of banding together because of members of the United Blood Nation coming into York **taking over the drug selling areas.**

N.T., 10/20/21, at 324 (emphasis added).

Appellant moved for a mistrial based on the reference to drug dealing. The trial court denied the motion and provided a cautionary instruction:

> THE COURT: Ladies and gentlemen, in the answer of Detective Kahley, there was reference made to gangs who engage in drug dealing. This case is not about drug dealing. It never has been. They have been instructed that they will—this will not occur. I so instruct the detective. Don't take it as any indication that this is a trial about that. It's clearly not. Thank you.

*Id.* at 326.

Appellant now argues that the instruction was flawed because it did not tell the jury to disregard the testimony and avoid attributing it to Appellant's guilt.  Even if the instruction had been proper, Appellant submits that it would have been inadequate to cure the error in light of Detective Kahley's other testimony that Appellant was a member of a criminal street gang.  He concludes that the trial court abused its discretion by denying his motion for mistrial.

The Commonwealth responds that Detective Kahley's remark was not intentionally elicited, was not exploited, and was cured of taint by the trial court's instruction.  Commonwealth's Brief at 49 (citing *Commonwealth v. Manley*, 985 A.2d 256, 266–67 (Pa. Super. 2009)).   Therefore, the Commonwealth argues that the trial court did not abuse its discretion by denying Appellant's motion.

A ruling on a motion for mistrial is within the discretion of the trial court. As such:

> "It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion." . . . "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict."  It is also settled that a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice.  The law presumes that a jury will follow the trial court's instructions.

***Commonwealth v. Dula***, 262 A.3d 609, 633 (Pa. Super. 2021) (quoting ***Commonwealth v. Gilliam***, 249 A.3d 257, 274–75 (Pa. Super. 2021)).

Here, we discern no abuse of discretion. Detective Kahley's reference to selling drugs arose while he was providing background information about the history of gangs in York City. Notably, the detective did not state that Appellant had any involvement with drug sales, nor that this homicide case was motivated by drugs. Moreover, the trial court promptly instructed the jury that the case was not about drug dealing. Absent any indication that the jury disregarded this instruction, we conclude that the trial court's instruction was sufficient to cure any prejudice from Detective Kahley's solitary remark about drug sales. Therefore, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial, and Appellant's fifth claim fails.

Judgment of sentence affirmed.

President Judge Panella joins.

Judge Kunselman files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/25/2023